THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROBERT REED, Defendant-Appellant.

First District (4th Division)   No. 78-51

Opinion filed January 31, 1980.

Lawrence Wolf Levin and Martin S. Egran, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Pamela L. Gray, and Mary A. Jischke, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE LINN delivered the opinion of the court:

Defendant, Robert Reed, was charged with robbery (Ill. Rev. Stat. 1975, ch. 38, par. 18—1) and, after a bench trial in the circuit court of Cook County, he was found guilty of attempt robbery. (Ill. Rev. Stat. 1975, ch. 38, pars. 8—4, 18—1.) He was sentenced to a two- to six-year prison term.

On appeal, defendant contends: (1) the identification evidence linking him to the crime was insufficient to prove him guilty beyond a reasonable doubt; (2) the trial court improperly disregarded his alibi defense evidence; and (3) the trial court failed to resolve issues of fact upon a theory of innocence.

We affirm.

At trial, the State's evidence disclosed that at about 1:30 a.m. on November 21, 1976, Patricia Sperando was walking home alone from a tavern where she had consumed two drinks while there in the company of her husband. Sperando testified that as she walked north of 31st Street on the 3600 block of Poplar Avenue, she noticed a man, later identified as defendant, walking behind her. There were two street lights in the area. Although it was a cold night, the defendant was wearing a sleeveless tee shirt and carrying a brown jacket.

After crossing an alley illuminated by a street light, Sperando started to run. Defendant also started to run after her. As she reached the fence of the first house beyond the alley, defendant grabbed her purse. Sperando let go of the purse and screamed. Defendant grabbed her, put his hand over her mouth, and tried to pull her away from the fence. She felt something at her back and, although she was unable to see a weapon, defendant said, "I got a knife and if you think I won't use it, you're crazy." He also repeatedly told her to "let go of the fence."

Sperando further testified that after struggling with defendant for a moment, she saw an automobile drive around the corner onto Poplar Street. As the car came close to her, Sperando released her hold on the fence and turned towards the car. As the car stopped near the curb, she took one step towards it. Defendant was still behind her. A man later identified as George Rumbaugh exited from the car and asked, "What's going on? Are you all right?" As Rumbaugh approached the sidewalk, defendant released Sperando and ran through the alley with her purse. Defendant ran 12 to 18 feet and then dropped the purse. Sperando further testified she was unable to identify defendant in court because "he was behind me most of time."

On cross-examination, Sperando acknowledged that she was unable to see defendant's face when she first glanced back at him. She could not recall looking back at him again after she had started running, but she had heard defendant running behind her. Sperando acknowledged that at a preliminary hearing on November 23, 1976, she testified that she had "caught a very quick glance of him running." She explained the discrepancy between this testimony and her trial testimony saying, "Sir, it's been a long time."

Although Sperando expressed reluctance to judge distance and length of time, she estimated that a few moments or minutes passed from the time defendant first grabbed her to when Rumbaugh stopped his car in front of her. She also testified that she remembered speaking with Officers Williams and Okeys on November 21, 1976, although she could not recall the conversation. She remembered, however, telling the officers that she did not get a good look at the offender. She could not recall whether she gave the officers a description of her assailant.

On redirect examination, Sperando testified further that she went to the police station on November 22, 1976, and viewed a lineup of four white male subjects. She heard each of the four men state his name and address. Based on hearing the defendant's voice, she identified him as her assailant. She thought she had told the officers that her identification was based on recognizing defendant's voice. Sperando positively identified defendant on the following day at the preliminary hearing.

On re-cross-examination, Sperando estimated defendant told her to let go of the fence more than twice and possibly four times. She admitted that her identification of defendant at the preliminary hearing was based upon her prior voice identification at the police station.

On redirect examination, Sperando again expressed reluctance to judge length of time but estimated that a few seconds elapsed between when she first saw defendant and when she ran to the fence. She could not recall testifying at the preliminary hearing that the time between when she first saw defendant and when he made contact with her was "just a minute or two, not very long." Sperando also estimated that Rumbaugh was six to nine feet from her when he stopped the car near the curb. She also stated that a few seconds elapsed between the time when Rumbaugh got out of his car and began to approach her and when defendant began to run away.

George Rumbaugh, an identification witness, testified for the State. Rumbaugh testified that he had lived in the neighborhood where the incident occurred. He further stated that as he was driving westbound on 31st Street on November 21, 1976, he saw a man whom he later identified as defendant, walking on the other side of Poplar Street, behind Sperando. His attention was drawn to defendant because defendant was wearing a sleeveless tee shirt and the weather was cold. He also recalled seeing defendant in the neighborhood on prior occasions.

Rumbaugh drove approximately one half block on 31st Street, and after he passed the corner of 31st and Poplar Streets, he turned the car around and drove back onto 31st Street, and then turned onto Poplar Street. On Poplar Street, he saw defendant and Sperando next to a fence near an alley. The area was illuminated by street lights. He saw defendant behind Sperando with his arms around her. She was pushed against the fence and she and defendant appeared to be struggling. Rumbaugh stopped his car six feet from the curb, about 15 to 20 feet in front of them. As he exited from his car, defendant and Sperando were facing him. When Rumbaugh began to approach them, defendant fled through the alley. Rumbaugh asked Sperando if she was all right and then unsuccessfully chased defendant.

Later that morning, Rumbaugh spoke with the police about the incident. On November 22, 1976, he identified defendant from a group of five police photographs. At 5 p.m. that day, he viewed a line up of five men at the police station. Each subject was asked to speak and turn in different directions. After viewing the lineup, Rumbaugh identified defendant. At trial Rumbaugh also identified defendant and again viewed the police photographs and selected defendant's picture.

On cross-examination, Rumbaugh acknowledged that between 8 p.m. and 11 p.m. on November 20, 1976, he had consumed three drinks.

Rumbaugh also stated that, although he never saw defendant walking on the same side of the street as Sperando, he did see defendant in the process of crossing the street. Rumbaugh also estimated that defendant was out of his sight for approximately 20 seconds while he turned his car around on 31st Street. He did not see either Sperando or defendant running during the time he observed them.

When asked to estimate the length of time he observed defendant, Rumbaugh asserted he viewed defendant on the corner for five seconds and for another five seconds after the defendant came in contact with Sperando. As he exited from his car, he looked directly at defendant and immediately ran to Sperando. Rumbaugh acknowledged testifying on direct examination, as he had at the preliminary hearing, that the door on the driver's side of his car opened to where the incident was occurring. During the incident, however, he could not remember ever seeing a purse, nor did he recall seeing defendant with a purse.

Rumbaugh also asserted he could not say "with certainty" that defendant was the same man he had seen across the street from Sperando. On redirect examination, however, Rumbaugh testified that he recognized defendant when he observed defendant and Sperando at the fence and when he stopped his car and observed them struggling.

At the close of Rumbaugh's testimony and after the State rested, defendant's motion for a directed verdict as to the robbery charge was sustained. The court continued the trial on the lesser-included offense of attempt robbery.

Officer Felon, called as a defense witness, testified that on November 22, 1976, he spoke with Sperando at the police station. He could not recall whether Sperando gave a description of defendant, although he thought she did. He could not, however, remember the description and he did not include it in his police report. He also could not remember whether he asked her if she could identify her assailant, although he did not believe he did.

Felon further testified to the procedure in connection with the lineup which he conducted. During the lineup, each of the five subjects gave his name and age. Felon could not remember if Sperando told him how she was able to identify defendant. Felon also did not ask her how she was able to make the identification.

Felon also testified to the contents of a police report prepared by Officers Williams and Okeys. During his investigation, he had examined this report which contained a description of the defendant. This description was not attributed to either Sperando or Rumbaugh. The report indicated that the offender was wearing a sleeveless tee shirt and carrying a brown jacket. It also described the offender as a white male, 19 years old, 5 feet 9 inches tall, 135 pounds, and having brown hair. On the

day he arrested defendant, Felon observed that defendant was a white male, 140 pounds, brown hair, and 5 feet 9 inches tall. Felon subsequently recorded this description in his case report.

Felon also was present on November 22, 1976, when Rumbaugh positively identified defendant from a group of police photographs. Felon also conducted the lineup and witnessed Sperando's and Rumbaugh's identification of defendant. He also participated in arresting defendant on November 22, 1976. Although he searched defendant's apartment, except the kitchen area, he did not recover any knives, tee shirts, or coats.

Officer Charles Roney was called as a defense witness. Roney testified that he did not know whether Sperando gave the description of the offender contained in the original police report. Although he was present during defendant's arrest, he could not remember what clothing defendant was wearing. Roney, who had helped conduct the lineup, stated that each subject was asked to state his name, age, and occupation. Roney also testified that Rumbaugh said he saw defendant drop the purse.

Police officer Yockum, also called by the defense, testified that during the lineup each subject was asked to state his name, address, and age. His testimony substantially corroborated the other officers' testimony.

Susan Hoffstad, defendant's fiancée, testified as an alibi witness. From 11 p.m. to 2 a.m. on the night of the incident, she was with defendant and two other friends, Charles Crager and Sherry Kozlar, at a birthday party. Prior to the party, she was with defendant at their home. They drove to the party in Crager's car. Hoffstad could not remember the exact street where the party took place. She asserted that neither she nor defendant had anything alcoholic to drink. Defendant remained at the party until 2 a.m., when he left with her, Crager, and Kozlar.

Sometime between 2 a.m. and 2:30 a.m., the group arrived at Ed's Snack Shop, a restaurant located one-half block from the scene of the incident and one block from defendant's apartment. They remained at the Snack Shop until 3 a.m. when they walked home. Hoffstad further testified that she had never seen defendant wear a sleeveless tee shirt or a brown leather coat.

Sherry Kozlar, defendant's friend, testified as an alibi witness. According to her testimony, she and her boyfriend, Crager, met defendant and Hoffstad at Ed's Snack Shop between 10:30 p.m. and 11 p.m., prior to going to the birthday party. At 11 p.m., they left for the party in Crager's car. The party took place at a home near 43rd and Louis streets. They drove through the stockyards and down Morgan Street to 43rd Street. During the party, she saw both defendant and Hoffstad

drinking alcoholic beverages. At 2 a.m., she, Crager, Hoffstad, and defendant drove to Ed's Snack Shop.

Charles Crager's testimony substantially corroborated the testimony of Hoffstad and Kozlar concerning defendant's presence at the birthday party. He did not recall, however, driving down Morgan Street to get to the party, as Kozlar had testified.

Defendant testified on his own behalf. He asserted that he had attended a birthday party with Hoffstad, Kozlar, and Crager on the night of the incident. At 11 p.m., he arrived at the party and at 2 a.m. he left with the same group. He denied he was walking on 31st Street or Poplar Street on the night and the time of the incident. He also denied attempting to take Sperando's purse.

After closing arguments, defendant was found guilty of attempt robbery. Defendant was sentenced to a prison term of two to six years. Defendant now appeals.

OPINION

I

Defendant first contends the identification testimony indicating that he was the offender was insufficient to prove him guilty beyond a reasonable doubt of the offense of attempt robbery. Defendant attacks the credibility of the State's identification witnesses, Sperando and Rumbaugh, and argues that the conditions for a positive identification were inadequate. We disagree.

■■ Where the identity of the accused is at issue, the testimony of only one witness is sufficient to convict, even if contradicted by the accused, provided that the accused is observed under circumstances which would allow a positive identification to be made. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313; *People v. Jones* (1975), 60 Ill. 2d 300, 325 N.E.2d 601; *People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631.) The key factor is to determine if the witness had an opportunity under adequate conditions to view the offender at the time of the commission of the crime. (*People v. Mays* (1976), 38 Ill. App. 3d 182, 347 N.E.2d 235.) It is not required that the validity of the identification be based upon perfect conditions for observation or that the time for observation be of a prolonged nature. *People v. Porter* (1975), 29 Ill. App. 3d 456, 330 N.E.2d 599, citing *People v. Harris* (1970), 46 Ill. 2d 395, 263 N.E.2d 35; *People v. Jackson* (1974), 23 Ill. App. 3d 1011, 320 N.E.2d 400.

In the instant case, Rumbaugh viewed the defendant under circumstances which later permitted him to make a positive identification of defendant. Rumbaugh testified that he was driving in his car when he first observed defendant walking behind Sperando, on the other side of

the street. Rumbaugh had lived in the neighborhood for 16 years and had previously seen defendant. His attention was drawn to defendant because defendant was wearing a sleeveless tee shirt, although the weather was cold.

After Rumbaugh saw defendant in the process of crossing the street towards Sperando, he turned his car around and drove back towards them. Rumbaugh was able to continue to observe defendant as he drove towards him. He stopped his car in front of defendant and Sperando about six feet from the curb. He then exited from his car. Rumbaugh testified he saw defendant's arms around Sperando, although he did not see defendant with a purse.

As Rumbaugh exited from the car and started to approach defendant, he was able to look directly at defendant for approximately five seconds. He viewed defendant from a distance of 15 to 20 feet. There were two street lights in the immediate area which provided illumination. Rumbaugh estimated that the total time he had observed defendant was 10 seconds.

On the day following the incident, Rumbaugh made a positive identification of defendant's picture while viewing police photographs. That same day, he again identified defendant, after viewing a line up of subjects. At trial, Rumbaugh was able to positively identify defendant as the assailant he had observed on November 21, 1976.

■■ We believe that Rumbaugh's identification testimony alone was of sufficient quality to support defendant's conviction. (See *People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631; *People v. Fabian* (1976), 42 Ill. App. 3d 934, 356 N.E.2d 982.) Rumbaugh viewed defendant for an adequate amount of time. (See *People v. Brown* (1977), 50 Ill. App. 3d 348, 365 N.E.2d 907 (five to 10 seconds); *People v. Porter* (1975), 29 Ill. App. 3d 456, 330 N.E.2d 599 (five to 10 seconds); *People v. Smith* (1974), 18 Ill. App. 3d 859, 310 N.E.2d 734 (10 seconds).) Rumbaugh also observed defendant under sufficient lighting conditions. (See, *e.g., People v. Mendoza* (1978), 62 Ill. App. 3d 609, 378 N.E.2d 1318.) Further, he recognized defendant as a man he had occasionally seen in the neighborhood prior to the incident. See, *e.g., People v. Horobecki* (1977), 48 Ill. App. 3d 598, 363 N.E.2d 1; *People v. Fabian* (1976), 42 Ill. App. 3d 934, 356 N.E.2d 982; *People v. Belt* (1972), 6 Ill. App. 3d 422, 286 N.E.2d 17.

In addition to Rumbaugh's positive identification testimony, the State relied on the identification testimony of the victim, Sperando. Although Sperando was unable to visually identify defendant at trial, she had previously made a voice identification of defendant after hearing him speak during the lineup procedure. At trial, Sperando explained that although defendant had been behind her during the incident, she had

heard him speak four or five times before he fled with her purse. She also testified that when defendant first began following her, she glanced back at him and noticed that he was wearing a sleeveless tee shirt and was carrying a brown jacket. This description of defendant's clothing was substantially corroborated by Rumbaugh's testimony.

The description of defendant's clothing also was contained in the original police report of the attempt robbery. Officers Felon and Roney, called by the defense, testified to the description of defendant's clothing as given in the police report. This report, however, failed to specify whether Sperando or Rumbaugh described defendant's clothing. The report also contained a summary of defendant's physical characteristics. Although this summary was not specifically attributed to either Sperando or Rumbaugh, it was substantially similar to Officer Felon's description of defendant at the time of his arrest. Thus, it is apparent the police officers' testimony further served to corroborate and buttress the testimony of the State's identification witnesses.

Defendant argues, however, that the identification testimony of both Sperando and Rumbaugh is inconsistent and therefore legally insufficient to sustain his conviction. Where a jury trial is waived, as in the instant case, the credibility of the witnesses, the weight to be accorded their testimony, and the inferences which may be drawn therefrom are within the determination of the trial court. (*People v. Pride* (1959), 16 Ill. 2d 82, 156 N.E.2d 551; *People v. Echoles* (1976), 36 Ill. App. 3d 845, 344 N.E.2d 620.) A court of review may not substitute its judgment for that of the trial court on questions of evidence or the credibility of witnesses and cannot reverse a conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. *People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631; *People v. Catlett* (1971), 48 Ill. 2d 56, 268 N.E.2d 378; *People v. Moore* (1977), 50 Ill. App. 3d 952, 365 N.E.2d 1356.

Defendant specifically attacks Rumbaugh's identification testimony. Defendant points out that on cross-examination Rumbaugh admitted he did not know that defendant in fact was the man he first saw on the corner across the street from Sperando. This testimony, in our opinion, does not weaken Rumbaugh's identification testimony in any significant degree since Rumbaugh later testified he had a clear view of defendant with his arms around Sperando.

Further, Rumbaugh's description of defendant was corroborated both by Sperando and the original police report. Although at trial Rumbaugh did not testify, as did Sperando, that defendant was carrying a jacket, the failure to describe attire with complete accuracy is a minor discrepancy and does not necessarily destroy the credibility of the witness. *People v. Carroll* (1973), 12 Ill. App. 3d 869, 299 N.E.2d 134; *People v. Marbley* (1975), 34 Ill. App. 3d 434, 340 N.E.2d 247.

Defendant also asserts that Rumbaugh's testimony that he observed defendant approximately 10 seconds is materially inconsistent with Officer Roney's testimony that Rumbaugh observed defendant three to four minutes. We believe this discrepancy is a minor one in view of the officer's testimony that he "believed" Rumbaugh said three to four minutes, and this time was not recorded in the officer's police report.

We believe the other inconsistencies cited by defendant likewise are substantially of an immaterial nature. Whether prior to the incident Rumbaugh saw defendant in the neighborhood four times or two times is collateral to the issue of whether defendant attempted to rob Sperando. Minor discrepancies in the testimony of an eyewitness do not destroy his credibility. (*People v. Bell* (1972), 53 Ill. 2d 122, 290 N.E.2d 214.) Where identification testimony is positive, precise consistency as to purely collateral matters is not required to establish guilt beyond a reasonable doubt. (See *People v. Boney* (1963), 28 Ill. 2d 505, 192 N.E.2d 920; *People v. Prochut* (1963), 27 Ill. 2d 298, 189 N.E.2d 290; *People v. Ganter* (1977), 56 Ill. App. 3d 316, 371 N.E.2d 1072; *People v. Montgomery* (1977), 51 Ill. App. 3d 324, 366 N.E.2d 623.)

The record discloses Rumbaugh's testimony to be generally clear and convincing. His identification of defendant as Sperando's assailant was positive and unwavering. Similarly, we believe that Sperando presented consistent and credible testimony concerning the events of the attempt robbery. While a minor discrepancy between her testimony at trial and at the preliminary hearing existed as to whether or not she saw defendant running behind her, she explained by saying, "Sir, it's been a long time." Further, defendant's attempt to impeach her testimony as to the number of times defendant spoke to her during the incident was properly rejected by the trial court since her testimony at trial was consistent with her responses to questions asked during the preliminary hearing.

■ Based on our review of the record, the evidence presented by the State is not improbable, unconvincing or contrary to human experience. The State's case discloses few inconsistencies and none of sufficient quality to raise a reasonable doubt as to defendant's guilt. See *People v. Perry* (1974), 21 Ill. App. 3d 18, 315 N.E.2d 173.

II

■ Defendant next contends that his alibi evidence cannot be disregarded since the only evidence contradicting it rests upon the identification of defendant. While this is an accurate statement of the legal principle, it is inapplicable here where the entire record reveals no reasonable doubt of guilt by virtue of an uncertain identification. (See *People v. Gardner* (1966), 35 Ill. 2d 564, 221 N.E.2d 232.) Our review of all of the evidence presented compels us to agree with the trial court's

determination that the identification was certain and positive. It is well settled that the trier of fact is not required to accept alibi testimony over the positive identification of a defendant, and this is so even if the alibi testimony is presented through a greater number of witnesses. *People v. Setzke* (1961), 22 Ill. 2d 582, 177 N.E.2d 168; *People v. Bullock* (1977), 51 Ill. App. 3d 149, 366 N.E.2d 475.

In the case at bar, defendant's alibi testimony created an issue of fact for the trial court to resolve. (*People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631; see also *People v. Novotny* (1968), 41 Ill. 2d 401, 244 N.E.2d 182.) Defendant, his fiancée, and his two friends testified that they were together during the period in question. In determining the credibility of these witnesses, the trial court could have considered the bias or interest, if any, of the witnesses. The court was not required to believe their testimony. (See *People v. Whitley* (1977), 49 Ill. App. 3d 493, 364 N.E.2d 511.) The trial court, unlike this reviewing court, heard the evidence presented and observed the demeanor of the witnesses; thus, the trial court was in a better position to appraise the credibility of the witnesses. We will not disturb the determination of the trial court.

### III

Defendant's final contention is that the trial court improperly resolved the issues of fact on a theory of guilt rather than innocence. He asserts that since the trial court granted his motion for a directed verdict as to the robbery charge, the court could not have believed Sperando's testimony that defendant fled with her purse. Since the court did not believe this testimony, he argues, we can assume that the court could not have believed the remainder of her testimony. Thus, defendant concludes that his conviction rests on Rumbaugh's identification and the court therefore must have resolved the contradictions in his testimony on a theory of guilt. We disagree with this reasoning.

It is settled that the trier of fact in reaching a conclusion of guilt or innocence may believe portions of defendant's case and portions of the State's case. (See *People v. Echoles* (1976), 36 Ill. App. 3d 845, 344 N.E.2d 620.) Although the trial court granted defendant's motion for a directed verdict as to the robbery charge, it ruled that the State had proven a prima facie case of the lesser-included offense of attempt robbery. Sperando's testimony supports the trial court's ruling; therefore, we will not speculate that the court did not believe the totality of Sperando's testimony.

Furthermore, we believe the inconsistencies in Rumbaugh's testimony were minor and the trial court so considered them, a conclusion the trial court could properly make. Where the trier of fact, who had the opportunity to observe the demeanor of the witness, renders a decision

based upon credible and substantial evidence which is sufficient to convict, the finding of guilt may not be set aside merely because the trier of fact chose to resolve the minor inconsistencies in favor of the State. *People v. Pelegri* (1968), 39 Ill. 2d 568, 237 N.E.2d 453.

Accordingly, for the reasons set forth, the defendant's conviction for attempt robbery is affirmed.

Affirmed.

JIGANTI and ROMITI, JJ., concur.