THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ORSON MONTGOMERY, Defendant-Appellant.

First District (3rd Division)    No. 78-1684

Opinion filed February 11, 1981.

Ralph Ruebner and Michael Mulder, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris Sholder, and John Hynes, Assistant State's Attorneys, of counsel), for the People.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

The defendant, Orson Montgomery, was convicted during a bench trial of armed robbery and was sentenced to nine years imprisonment. Prior to trial the defendant moved to quash his arrest and to suppress evidence seized at the time of his arrest. The court denied the motion to

quash the arrest but did suppress one of the items seized, a purse found in the defendant's kitchen.

On appeal the defendant contends he was not proven guilty beyond a reasonable doubt and that his warrantless arrest at his apartment was made in violation of his rights under the Fourth Amendment of the United States Constitution (U.S., Const. amend. IV).

At trial the State's witnesses, Theresa Reid and Berdette Pugh, testified that at about 5:30 a.m. on August 27, 1977, they got off a CTA bus at the corner of 72d Street and Ashland Avenue and were walking home. Two men were standing ahead of them in front of a garage. After the women passed the garage the two men began to follow. One of the men approached Reid, put a gun to the left side of her neck and said, "This is a stick-up." The other man held a box-cutter knife two inches away from Pugh's breast and repeated the same message to Pugh who was standing to the right of Reid. The robbers took their purses and fled. Reid's black purse contained identification cards, food stamps and cash. Pugh's coin purse contained money.

Reid saw the robbers get into an orange colored 1972 Cutlass Oldsmobile. Thereafter, the victims drove around the area looking for the car. They saw the car and wrote down its license number. As the car was driven slowly down Ashland Avenue by a man who was not one of the two robbers, Pugh and Reid saw the two robbers take the purse of a woman and run off. Pugh said the man with the knife got into the car but she did not see where the man with the gun went.

Reid identified the defendant at trial as the man with the silver gun, which had a black-taped handle. She stated she was unable to identify the defendant during the police station lineup on the day of the robbery but that she did identify her purse and identification cards at the police station. Pictures of the latter items and of the defendant's car and the gun used in the robbery were also identified by Reid at trial.

Pugh identified the defendant as the man with' the gun' who took Reid's purse and stated that at the time of the robbery the defendant was wearing a cap, black sweater and purple pants and held a silver gun with brown tape on it. She did not notice any of the defendant's facial characteristics. Pugh testified that the man with the gun was standing about a foot from her and on the left side front of Reid. At the police lineup on the day of the robbery, Pugh also identified the defendant and the individual who held the knife and took her coin purse. When shown a picture of that lineup, Pugh stated that the defendant was not wearing a black sweater and purple pants and that another individual in the lineup was wearing that clothing. At trial Pugh identified the gun and box-cutter knife used in the robbery.

The day after Pugh testified the State made a motion for a continuance to investigate newly discovered information. When the trial resumed, several days later, the State informed the court that a person claiming to be Berdette Pugh had called the State's attorney's office the morning following her court appearance and said she wished to drop the charges against the defendant because she was not sure whether he was the person with the gun or the person riding in the car. The caller was asked to appear in court but did not do so, and the State was unable to locate Pugh. The trial judge said the bailiff had received a similar call. Defense counsel indicated that the defendant wished to proceed with the trial while the search for Pugh continued.

The State then called Police Officer Joseph Rokas who testified that on August 27, 1977, he was assigned to investigate the robbery. He and his partners checked the registration of the license plate number listed on the police report and said the plate was registered to the defendant for a 1972 Cutlass. Rokas and two other officers went to the defendant's apartment on East 70th Street and observed an orange 1972 Cutlass, with the specified license plate, parked outside. Officer Rokas knocked on the door and announced that he was a police officer. The defendant opened the door and, when questioned, said he owned an orange Cutlass parked outside in front of the apartment. The defendant led the officers into his living room, whereupon Rokas saw a black purse with papers and identification cards on a cocktail table. He inspected the purse, observed Theresa Reid's name on the identification cards, and placed the defendant and the other two men in the defendant's apartment under arrest. The couch upon which the two men were sitting was examined, and a .32-caliber silver revolver with black tape on the handle was found. Three food coupon books, belonging to Theresa Reid, were found on the defendant's person and, during a search of the defendant's car at the police station, some of Theresa Reid's identification cards and a box-cutter knife were found.

Roukas testified that Reid and Pugh viewed a lineup at about noon on August 27, 1977. Reid did not make an identification. Pugh identified the defendant and another man. Officer Rokas said that at the time of this identification, Pugh remarked that a black shirt worn by the third man in the lineup was worn by the defendant at the time of the robbery.

Officer Rokas also testified that the defendant told him that he let two people use his car on August 27, 1977. The defendant said that when they came to pick him up there were two purses in the car.

The defendant testified on his own behalf. He stated that on August 27, 1977, he had been playing cards at his cousin's house until about 5:30 a.m. While driving home, he heard two shots fired and saw Michael Amos, a friend, running down Ashland towards 71st Street. The defend-

ant stopped to give Amos a ride; a few minutes later they picked up Ricky Grayer, Amos' friend. Grayer also was running and carrying a purse. The three men went to the defendant's apartment and the defendant left Amos and Grayer in the living room and went to bed. After the police saw a purse on a table in the living room and examined its contents, they arrested the defendant. The defendant denied participating in any robberies and said the food stamps recovered from his apartment were found on Amos' person, not his own. The defendant admitted that he had given a different factual account of his whereabouts and car use on August 27, 1977, to the police.

On the basis of the testimony discussed above, the defendant was found guilty of armed robbery. The defendant filed post-trial motions, indicated that Berdette Pugh had been found and requested a hearing so that Pugh could give additional testimony. Pugh appeared in court and acknowledged that she had called the assistant State's attorney and the judge's chambers after she had given testimony earlier in the case because she began to have doubts about the defendant's height and the clothing he wore. She stated that she was no longer certain that the defendant was the man with the gun who took Theresa Reid's purse.

On cross-examination Pugh testified that she had identified the defendant at trial, at a preliminary hearing and during the police station lineup and that after the lineup she told the investigator that the defendant wore a black shirt at the time of the robbery. She said she was certain that the defendant was the robber when she identified him in court.

After reviewing his notes and the trial transcript of Pugh's testimony, the trial judge denied the defendant's motion for acquittal and, in the alternative, for a new trial. He found the evidence to be clear, conclusive and beyond a reasonable doubt and stated that there had been a proper identification of the defendant by Pugh at trial and during the preliminary hearing and at the police station lineup.

The defendant contends on appeal that he was not proven guilty of armed robbery beyond a reasonable doubt because the evidence against him consisted of a doubtful identification that later was recanted. The defendant argues that without this direct evidence the State's case is based on weak circumstantial evidence and conflicting testimony. He relies on the fact that neither Reid nor Pugh could give physical descriptions of the robbers and that their testimony was inconsistent regarding the color of the tape on the revolver used in the robbery, which of the two robbers was wearing a cap and when the orange car was first seen during the victims' search for it.

The points raised by the defendant concern the credibility of the witnesses. It is the duty of a court sitting without a jury to determine the credibility of the witnesses and the weight to be given their testimony

(*People v. Clark* (1979), 79 Ill. App. 3d 640, 398 N.E.2d 883), and on review, this court will not substitute its judgment for that of the trial court unless the evidence is so improbable or unsatisfactory as to raise a serious doubt of the defendant's guilt. (*People v. Powell* (1978), 72 Ill. 2d 50, 377 N.E.2d 803, *cert. denied* (1979), 440 U.S. 907, 59 L. Ed. 2d 455, 99 S. Ct. 1214; *People v. Reed* (1980), 80 Ill. App. 3d 771, 400 N.E.2d 688.) We have reviewed the record and cannot say that the evidence was so conflicting and contradictory as to cast doubt on the defendant's guilt.

■■ The defendant's conviction was based primarily on the testimony of and identifications by the victims to the robbery. The defendant was identified by Reid and Pugh at trial and by Pugh at a police station lineup and a preliminary hearing. The defendant places great emphasis on Pugh's post-trial testimony and argues that her identifications of the defendant were not credible because she recanted her prior testimony and identifications. Initially, we do not agree that Pugh's post-trial testimony was a recantation since she did not withdraw or repudiate her prior testimony. (See Black's Law Dictionary 1433 (4th ed. 1968).) Pugh did not testify that she lied when she identified the defendant as one of the robbers. (See *People v. Hilliard* (1978), 65 Ill. App. 3d 642, 382 N.E.2d 441.) She said she was certain when she made the prior identifications of the defendant but began to have doubts later. Furthermore, even assuming a recantation occurred, it is well-settled that recanting testimony is regarded as very unreliable and that it is for the trial judge to determine the credibility of the recantation testimony after having observed the demeanor of the witness at trial and during the hearing on the post-trial motion. *People v. Veal* (1978), 58 Ill. App. 3d 938, 374 N.E.2d 963, *cert. denied* (1979), 441 U.S. 908, 60 L. Ed. 2d 378, 94 S. Ct. 2001.

The trial court found the identifications and other evidence against the defendant credible, clear and conclusive. We agree. Where the identity of the accused is at issue, identification testimony is sufficient to convict provided the accused is observed under circumstances which would allow a positive identification to be made. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) The key factor is to determine if the witness had an opportunity under adequate conditions to view the accused during the commission of the crime. *People v. Reed* (1980), 80 Ill. App. 3d 771, 400 N.E.2d 688.

The identifications of the defendant in the instant case were positive because the victims had sufficient time to observe him at a reasonable distance and under adequate lighting. The robbery took place at 5:30 a.m. during the month of August. Pugh testified that it was not dark but grey outside and that a streetlight was on at the corner of 72d and Ashland

Avenue, where the purses were taken. During the robbery the man holding the gun, later identified as the defendant, stood at Reid's left side and about a foot from Pugh, who was standing next to Reid.

■■ We also reject the defendant's reliance on minor discrepancies in the factual accounts of the robbery by Reid and Pugh and find that these did not make the evidence against the defendant so improbable and unsatisfactory as to require reversal of the defendant's conviction. (See *People v. Jackson* (1963), 28 Ill. 2d 566, 192 N.E.2d 873; *People v. Draper* (1979), 79 Ill. App. 3d 749, 398 N.E.2d 1023.) Similarly, the conflicting testimony of Officer Rokas and the defendant concerning the presence of Reid's food stamps on the defendant's person at the time of his arrest does not raise a reasonable doubt of the defendant's guilt. The trial court viewed the demeanor of the witnesses and properly could have concluded that the officer's testimony was the more credible. Therefore, based on the evidence presented at trial, we find the defendant was proven guilty of armed robbery beyond a reasonable doubt, and we sustain his conviction on this ground.

The second issue raised on appeal is whether the defendant's warrantless arrest at his apartment is a violation of the fourth amendment and thus requires suppression of the evidence seized as a result thereof. Recently the United States Supreme Court decided *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371, and held that the Fourth Amendment of the United States Constitution, made applicable to the states by the fourteenth amendment, prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest.[1] Thereafter the Illinois Supreme Court, in *People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543, held that a warrantless arrest in a suspect's residence is permissible when exigent circumstances exist and the law enforcement officers act reasonably. Exigent circumstances existed in *Abney* based on evidence that the police entered the defendant's residence within 1½ hours after the crime, that the officers acted without delay and immediately after receipt of the victim's statement, and that prompt action was necessitated by a belief that the suspect was armed and exhibited some sign of a violent character. Additionally, the court noted that the officers acted reasonably by peacefully entering the defendant's residence, having strong reason to believe that the defendant would be present, after the defendant was clearly identified by the victim and based upon a clear showing of probable

---

[1] In *Payton* the Supreme Court did not consider whether the warrantless entry to effectuate Payton's arrest would have been justified by exigent circumstances because the New York courts did not rely on any such justification (445 U.S. 573, 582-83, 63 L. Ed. 2d 639, 648-49, 100 S. Ct. 1371, 1378).

cause resulting from reasonably trustworthy information.[2] *Cf. People v. Rembert* (1980), 89 Ill. App. 3d 371, 411 N.E.2d 996 (exigency not shown). ■■ Applying *Abney* to the facts in the instant case, we find that the defendant's warrantless arrest at his residence was constitutionally valid because the actions of the police officers were reasonable and exigent circumstances existed. On the basis of the information supplied by the victims, the police officers were able to determine the defendant's whereabouts and proceeded to his apartment on the day of the robbery. There was no deliberate or unjustified delay by the officers whose prompt actions were necessitated by a belief that the suspect was armed. The officers acted with probable cause based on the trustworthy information of two ordinary citizens, the victims of the robbery (see *People v. Logan* (1979), 78 Ill. App. 3d 646, 397 N.E.2d 504), who were able to give a general description of the robbers and the license plate and description of the car used in the robbery. When the police officers arrived at the defendant's residence they saw the car and had sufficient reason to believe that the defendant would be on the premises. The nature of the entry was also reasonable, since the officers entered the apartment only after they knocked and announced their presence. No violence resulted from this entry. Since we conclude that the warrantless entry into the defendant's apartment, in order to arrest the defendant, was proper, any evidence obtained during the search incident to the arrest or in plain view was properly admitted.

For the foregoing reasons the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

RIZZI, P. J., and McNAMARA, J., concur.

---

[2] Many of the factors discussed in *People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543, were considered to be exigent circumstances in *Dorman v. United States* (D.C. Cir. 1970) (*en banc*), 435 F.2d 385, an often-cited case whose reasoning was found to be persuasive in *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371.