THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PERRY WILLIAMS, Defendant-Appellant.

First District (5th Division)   No. 1—88—0272

Opinion filed November 15, 1991.

Randolph N. Stone, Public Defender, of Chicago (Emily Eisner, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Walter P. Hehner, and Candace A. Williams, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

A jury found defendant, Perry Williams, guilty of armed robbery, and the court sentenced him to a 20-year term of imprisonment. On appeal, defendant contends that the trial court failed to ask the venire the questions required under *People v. Zehr* (1984), 103 Ill. 2d 472, 469 N.E.2d 1062; that the State failed to prove defendant guilty beyond a reasonable doubt due to insufficient identification testimony; and that the prosecutor made improper remarks in closing argument. We affirm.

Curtis Sims, manager of a Church's Fried Chicken restaurant located at 2 South Pulaski in Chicago, testified at trial that on November 10, 1986, at approximately 8:20 p.m., defendant robbed the restaurant, taking $147. Sims heard the cashier call him, and he went out to the customer window where defendant stood, holding a gun,

and demanding money from the register and from the extra money box kept under the counter. Defendant then came through the door into the cashier's area. He took Sims, the cashier, the cook and a visitor to the back of the store, then to the office, where defendant took money from another cash box. Sims unlocked the back door, and defendant left.

Sims testified that about two weeks after the robbery, the police brought photographs of 14 men to his home and he identified defendant's photograph. On December 4, 1986, Sims viewed a lineup at the police station and Sims again identified defendant. Sims later identified defendant at a preliminary hearing, and at trial. Sims testified that during the robbery he stood about a foot away from defendant for about 5 to 10 minutes. Nothing obstructed his view, and the lighting was good. Defendant was breathing "like [he was] either nervous or having an attack with something." Sims testified that he described the robber to the police as weighing 175 to 180 pounds, measuring 5 feet 5 inches or 5 feet 6 inches tall, with a scar over his forehead, and that he was about 30 years old. Sims testified on cross-examination that he did not recall, but he "probably" told the police the offender was 5 feet 2 inches and 155 pounds. Until pointed out to him at trial, Sims never noticed a scar on the left side of defendant's neck. Defendant had worn a winter jacket during the robbery.

Tommy Jackson, the restaurant's cook, testified for the State that defendant had committed the robbery. Jackson had initially stood about 10 to 12 feet away from defendant during the robbery. At one point, he stood one foot from defendant. He could see defendant plainly. Jackson identified defendant from 14 photographs shown to him by the police 10 days to two weeks after the robbery. "I recognized it right off the bat ***." Jackson also identified defendant in a lineup on December 4, 1986. He denied telling the police that the robber was 5 feet 2 inches tall and weighed 155 pounds. In fact, he gave no description to the police on the night of the robbery.

Calvin Shavers, the store manager for a different Church's restaurant, testified for the State that he was in Church's at 2 South Pulaski on the night that defendant committed the robbery. Shavers stood eight feet from the cash register when defendant came in and demanded money. Defendant pushed Shavers and Jackson into the office. At that point, Shavers stood one foot from defendant. Shavers saw defendant for about half a minute. Shavers identified defendant in court. It was his first identification of defendant. He did not view a lineup or photographs, and only learned of the arrest about a month before trial. Shavers testified that he told the police that the offender

was 5 feet 5 inches, in his late 30's, and "had sort of like a hard time breathing."

Lena Gholston, the 15-year-old cashier on duty in the restaurant that night, testified that a man who was breathing hard came into the store, pointed a gun at her, and demanded money. Gholston yelled for a manager, and Sims came out. The man pushed Gholston, Sims, Shavers and Jackson into the office, and demanded the extra money from the box, which they gave him. Defendant demanded that Sims unlock the back door, and defendant left. During most of the robbery, Gholston's back was to the robber, as he held on to her shirt collar and held the gun at her back. She viewed his face for only 1½ minutes.

Gholston testified that she told the police the robber was a black male with a mustache, about 5 feet 4 inches tall, and that he was breathing heavily. She was not shown any photographs by the police. She viewed a lineup but could not identify anyone. "I didn't want to identify anybody because I wasn't sure who it was, and I didn't want to send the wrong guy to jail." On redirect examination, Gholston identified defendant in court as the robber, but also stated: "I'm not sure if that's him, but it looks like him." On re-cross-examination, Gholston testified that defense counsel came to her house and she told him the person in the lineup was ugly.

Margaret Krischunas, a Chicago police officer, testified that on November 10, 1986, she interviewed Sims, Jackson, Shavers and Gholston. The description of the offender was "a conglomeration of all of the information that was given" by the witnesses. The offender was described to her as a male black, between 35 and 39 years old, 5 feet 2 inches, 155 pounds, brown eyes, black hair, medium complexion, with a mustache, and "that he had had trouble breathing."

Kanam Kuan, a Chicago police sergeant, testified that he interviewed Sims on December 1, 1987. Sims picked defendant's picture from 14 photographs. On the same day, Kuan went to Jackson's home, and Jackson also picked defendant's picture out of the 14 photographs. Kuan arrested defendant on December 4, 1987. The home address which defendant gave was located about three blocks from the restaurant. Kuan observed that defendant had "a little difficulty in breathing and also [was] drooling at his mouth." Defendant told Kuan that he had asthma. A protective search of defendant revealed a medical breathalyzer or inhalator. Kuan's case report did not mention the breathing problem or breathalyzer. Kuan recalled the description he had described defendant as 5 feet 6 inches or 5 feet 7 inches tall and weighing 155 to 160 pounds. The supplemental report, which in-

cluded information reported by defendant himself, stated that defendant was 5 feet 7 inches tall and weighed 135 pounds. Kuan noticed several scars on defendant's face but none on the left side of his neck. Kuan testified further that Sims and Jackson separately identified defendant in a lineup. Shavers did not view the lineup because Kuan could not locate him.

Rosie Lee testified for the defense that defendant had been a boarder in her house for about one year. She believed defendant was 5 feet 6 inches tall and weighed 130 to 135 pounds. He had a scar on the left side of his neck, a scar on his right temple area, and a scar on his forehead. She never noticed a breathing problem. Defendant routinely left home at 6:30 a.m., and arrived home between 8:30 and 9 p.m. On cross-examination, Lee testified that she did not know the date on which the armed robbery occurred, and she did not know with any certainty where defendant was on that date.

The jury found defendant guilty of armed robbery.

On August 3, 1987, several weeks after the trial concluded, defense counsel appeared before the court on his motion for a new trial and stated that defendant had provided him with information that another man, Larry Pride, who looked like defendant and also had asthma, had been convicted in May 1987 of robbing eight Church's Fried Chicken restaurants eight times in the Chicago area. The motion for a new trial continued from time to time until December 29, 1987.

At the hearing, Edmund Mook, a Chicago police officer, testified on behalf of the defense that on November 21, 1986, he arrested Larry Pride and Tyrone Robertson for the armed robbery of two Church's Fried Chicken restaurants, one of which was robbed six times, and one of which was robbed twice. One of those restaurants was about 10 blocks from the Church's at 2 South Pulaski. Pride lived about one mile from 2 South Pulaski.

Pride was 34 years old, 5 feet 10 inches tall and weighed 175 pounds. Mook never observed Pride suffering from any breathing problems. Pride never requested any medication. None of the eyewitnesses to the eight robberies for which Pride was tried ever mentioned Pride having trouble breathing. To the best of Mook's knowledge, Pride was still free on November 10, 1986, the date of the robbery for which defendant here was tried.

Mook testified further that the series of eight robberies of Church's restaurants involved Pride and an accomplice. Typically, the two men would enter the Church's restaurant, perhaps place an order, and then announce a robbery. The offenders would then crawl over

the counter, have the cashier remove the money from the register, and take the money from the extra cash box. The employees would be gathered together and directed into a bathroom, closet or rear office, and money would then be taken from the safe. The employees were locked into a room, and the offenders would exit through a rear door.

The parties stipulated that on April 6, 1987, Pride was convicted on a plea of guilty and sentenced to 15 years in prison.

The parties stipulated that Jackson had come in to view defendant's and Pride's photographs, and he again identified defendant as the robber.

The assistant State's Attorney informed the court that defendant's and Pride's photographs had been shown to Sims, and Sims indicated "there was no doubt in his mind" that defendant was the offender, and "that the two pictures *** , he said [didn't] look the same at all."

The parties also stipulated, somewhat obscurely, that Gholston viewed defendant's and Pride's photographs, and that she identified defendant Williams as the robber. "She was further asked if [defendant] and Mr. Pride looked alike. She said, 'Yes, they look similar. They're both ugly.'" She "indicated that she thought Mr. Pride was [defendant] when she looked at the two pictures."

The court denied the motion for a new trial. The court then sentenced defendant to a prison term of 20 years.

OPINION

Defendant first contends that the trial court failed to make the proper *voir dire* inquiries regarding jury bias pursuant to *People v. Zehr.* That case provides that jurors must "know that a defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be proved guilty beyond a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him." *People v. Zehr*, 103 Ill. 2d at 477.

■ Defendant failed to submit questions regarding jury bias, failed to object to the lack of inquiry and failed to raise the issue in his post-trial motion. In fact, defense counsel specifically declined to ask any questions of the prospective jurors when the court asked if he would like to do so. Thus, defendant has waived the issue for review. *People v. Thomas* (1989), 186 Ill. App. 3d 782, 800, 542 N.E.2d 881 (*Zehr* argument waived); *People v. Barnett* (1988), 173 Ill. App. 3d 477, 485, 527 N.E.2d 1071 (same); *People v. Starks* (1988), 169 Ill. App. 3d 588, 594, 523 N.E.2d 983 (same); *People v. Kokoraleis* (1987), 154 Ill. App. 3d 519, 525, 507 N.E.2d 146 (same); *People v. Visnack*

(1985), 135 Ill. App. 3d 113, 124, 481 N.E.2d 744 (same); *People v. Estes* (1984), 127 Ill. App. 3d 642, 655, 469 N.E.2d 275 (same).

Moreover, we cannot find plain error (134 Ill. 2d R. 615(a)) exists here, in light of the overwhelming identification evidence against defendant, as discussed below. See *People v. Barnett*, 173 Ill. App. 3d 477, 527 N.E.2d 1071 (failure to make *Zehr* inquiries was not plain error, in light of overwhelming evidence against defendants); *People v. Visnack*, 135 Ill. App. 3d at 124 (same).

Defendant next contends that the State failed to prove him guilty beyond a reasonable doubt because Gholston could not identify him before trial, wavered on her identification of defendant during trial, and after trial was confused between defendant and Pride, and because Pride, who looked like defendant, was found guilty of robbing other Church's restaurants in Chicago.

A criminal conviction will not be overturned unless, after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.) When defendant's identification forms the central question in a prosecution, the testimony of a single witness is sufficient to convict if the witness is credible and if the witness viewed defendant under conditions permitting a positive identification to be made. (*People v. Slim* (1989), 127 Ill. 2d 302, 537 N.E.2d 317; *People v. Richardson* (1988), 123 Ill. 2d 322, 353, 528 N.E.2d 612.) Minor discrepancies in the eyewitnesses' identification testimony only go to the weight to be given the testimony. *People v. Morgan* (1963), 28 Ill. 2d 55, 190 N.E.2d 755.

In considering the factors which are relevant to determining whether an identification is sufficient, and in viewing the evidence in a light most favorable to the State, we find that defendant was proved guilty beyond a reasonable doubt.

The eyewitnesses had an opportunity to view the robber at the time of the incident. (See *People v. Slim*, 127 Ill. 2d 302, 537 N.E.2d 317.) Sims, Jackson and Shavers all viewed defendant face to face. Sims stood one to two feet from defendant for 5 to 10 minutes. Nothing obstructed his view, and the lighting was good. Jackson initially stood about 10 to 12 feet away from defendant during the robbery. At one point, he stood one foot from defendant. He could see defendant plainly. Shavers stood eight feet from the cash register when defendant came in, and at another point he stood one foot from defendant. The lighting in the restaurant was very good. (See *People v. Reed* (1980), 80 Ill. App. 3d 771, 400 N.E.2d 688 (viewing time of 5 to 10

seconds was sufficient).) Moreover, the eyewitnesses' degree of attention was good. See *People v. Slim*, 127 Ill. 2d 302, 537 N.E.2d 317.

In addition, the witnesses' level of certainty at the subsequent confrontation was high, and the length of time between the crime and confrontation was short. (See *People v. McTush* (1980), 81 Ill. 2d 513, 410 N.E.2d 861.) Sims and Jackson picked defendant's photograph out of 14 photographs within 10 days to two weeks after the crime was committed. They identified defendant in a lineup shortly thereafter. Shavers did not identify defendant until trial, but he was certain of the identification.

The witnesses' prior descriptions were sufficiently accurate to support the identification. (See *People v. Slim*, 127 Ill. 2d 302, 537 N.E.2d 317.) Defendant was apparently 5 feet 7 inches tall and weighed 135 pounds, according to the information he gave when he was arrested. He had a scar on his forehead, on his right temple, and on the left side of his neck.

Sims testified that he described the robber to the police as weighing 175 to 180 pounds, measuring 5 feet 5 inches or 5 feet 6 inches tall, with a scar over his forehead, and that he was about 30 years old. He had trouble breathing, as if he was "having an attack."

Shavers testified that he told the police that the offender was 5 feet 5 inches, in his late 30's, and "had sort of like a hard time breathing."

Gholston testified that she told the police the robber was a black male with a mustache, about 5 feet 4 inches tall. He had trouble breathing.

Officer Krischunas testified that on the night of the robbery, the victims told her that the offender was a male black, between 35 and 39 years old, 5 feet 2 inches, 155 pounds, with brown eyes, black hair, a medium complexion, a mustache, and "that he had had trouble breathing."

Officer Kuan also observed at the time of arrest that defendant had "a little difficulty in breathing and also [was] drooling at his mouth." Defendant told Kuan that he had asthma. A protective search of defendant revealed a medical breathalyzer or inhalator. Kuan's case report, however, did not mention the breathing problem or breathalyzer.

In contrast, Officer Mook testified after trial that Pride was 34 years old, 5 feet 10 inches tall and weighed 175 pounds. Mook never observed Pride suffering from any breathing problems.

Where the witness makes a positive identification, precise accuracy in the preliminary description is not necessary. (*People v. Men-*

*doza* (1978), 62 Ill. App. 3d 609, 378 N.E.2d 1318.) This is true even where there are discrepancies or inaccuracies as to height and weight. (*People v. Smith* (1977), 52 Ill. App. 3d 583, 367 N.E.2d 756.) The descriptions here were sufficiently similar to defendant to support the identification testimony, particularly where Sims and Jackson made positive identifications of defendant in photographic arrays and in lineups. See *People v. Mendoza*, 62 Ill. App. 3d 609, 378 N.E.2d 1318.

While none of the witnesses noticed a scar on defendant's neck, they testified that defendant was wearing a ski jacket at the time. Moreover, Officer Kuan testified that he also did not notice a scar on defendant's neck, although he did see the scar on defendant's face. See *People v. Miller* (1964), 30 Ill. 2d 110, 195 N.E.2d 694 (failure of witnesses to observe defendant's scar does not create a reasonable doubt as to his guilt).

The 15-year-old Gholston was the only eyewitness who could not identify defendant with sufficient credibility to support a conviction. However, she had her back to defendant during most of the incident. Moreover, three other eyewitnesses offered strong identification testimony, and only a single witness is necessary. See *People v. Slim*, 127 Ill. 2d 302, 537 N.E.2d 317.

In addition, in considering a motion for a new trial based on new evidence, defendant must show that the evidence would probably change the outcome of the case. (*People v. Patterson* (1980), 88 Ill. App. 3d 878, 410 N.E.2d 1115.) Defendant bears the burden of proof in showing he is entitled to a new trial on the basis of newly discovered evidence. *People v. Carpenter* (1979), 74 Ill. App. 3d 770, 393 N.E.2d 50.

■ Here, defendant failed to show that the evidence regarding Pride's convictions for robbing Church's restaurants eight times would probably change the outcome of the case. Jackson and Sims did not waver from their identification of defendant at all. When shown Pride's photographs, Sims and Jackson both remained convinced that it was defendant, not Pride, who committed the robbery. For example, Sims apparently indicated "there was no doubt in his mind" that defendant was the offender, and "that the two pictures *** , he said [didn't] look the same at all." Gholston's identification testimony was equivocal at best, both during trial and when she viewed Pride's photograph after trial.

Finally, defendant contends that the prosecutor made improper comments during the State's rebuttal closing argument. Prosecutors are afforded wide latitude in closing argument. In the absence of a clear abuse of discretion, a trial court's determination regarding the

propriety of closing arguments will not be disturbed on review. Even improper remarks will not result in reversal unless the remarks represent a material factor in that conviction. *People v. Cisewski* (1987), 118 Ill. 2d 163, 514 N.E.2d 970; *People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200; *People v. Sheppard* (1990), 193 Ill. App. 3d 401, 549 N.E.2d 971.

Here, defendant points to the following comment made by the prosecutor:

> "Well, there is one identification that counsel didn't talk about, and I believe that the defense would have just as soon as talk about. That's the identification each and every one of you were involved in. That identification that took place when Tommy Jackson, Curtis Sims, Calvin Shaver each individually took that witness stand and took an oath. That's an identification that was made in this court under *oath before God* in front of each and every one of you individuals.
>
> * * *
>
> Obviously, counsel is very, very uncomfortable with that identification. That identification you saw. Those witnesses pointed out this defendant and told you this is the man who robbed our store on that date. Ladies and gentlemen, the burden that you get in this case is the burden beyond a reasonable doubt. I would ask that you do not let the defense *make you feel guilty for doing your duty*. You did not put this man here. He put himself here." (Emphasis added.)

Defendant's objection was overruled. Defendant complains that the argument "evok[ed] the oath 'before God.'" Defendant argues this was further exacerbated when, using "the unsubtle admonishment not to 'feel guilty,'" the prosecutor appealed to the awe of a deity" while calming the jury about returning a guilty verdict on less than sufficient evidence. Defendant maintains that the prosecutor "simultaneously bolstered the credibility of his witnesses and diminished the State's burden of proof" by appealing to the jurors' personal fears as a "prelude for absolving them of their sense of responsibility."

Defendant relies on *People v. Hooper* (1989), 133 Ill. 2d 469, 552 N.E.2d 684, where the court remanded for a new capital sentencing hearing on the basis that the State argued that if the jurors did not impose the death penalty, they would have lied to the judge and to God. (*Hooper*, 133 Ill. 2d at 498-99.) The court stated: "We consider that to say that the jury would be branded with lying to the judge and lying to God if it did not vote for the death sentence could well have had the effect of diverting the jury's attention from its

consideration of the aggravating and mitigating factors." (*Hooper*, 133 Ill. 2d at 499.) The comment here does not similarly attempt to convince the jurors to either find defendant guilty or they will have "lied to the judge and to God." Instead, the comment in question here merely refers to the *witnesses'* sworn testimony.

Moreover, the prosecutor here did not alter the burden of proof. *Cf. People v. Jones* (1982), 108 Ill. App. 3d 880, 439 N.E.2d 1011 (prosecutor improperly suggested that defendant had burden of proving a reasonable doubt and that his proof failed to create such a doubt).

We hold that no error occurred in the State's closing argument.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

MURRAY and McNULTY, JJ., concur.