THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RYAN LAMONT PENDLETON, Defendant-Appellant.

First District (1st Division)   No. 1—93—0823

Opinion filed April 8, 1996.—Rehearing denied May 13, 1996.

Rita A. Fry, Public Defender, of Chicago (James S. Jacobs, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James Navarre, and Michael E. Robie, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

After a second jury trial, defendant, Ryan Pendleton, was found guilty of first-degree murder on January 25, 1993. Defendant was sentenced to a single term of 40 years' imprisonment in the Illinois Department of Corrections. Defendant presents two arguments on appeal: (1) he was denied a fair trial under the Illinois Constitution's due process clause because he was forced to exercise two of his peremptory challenges to excuse two jurors who should have been excused for cause by the trial court; and (2) the trial court abused its discretion by imposing defendant's 40-year sentence.

BACKGROUND

On October 15, 1991, George Fife was shot and killed in front of Lou's Lounge at 2871 East 75th Street. Defendant was arrested and charged with first-degree murder. Following a mistrial, defendant was tried by a second jury, found guilty, and sentenced to 40 years' imprisonment for first-degree murder.

*VOIR DIRE*

On January 21, 1993, jury selection began in the second trial. During the trial court's preliminary comments to the venire members concerning burdens of proof and presumptions of innocence, Carol Passowic stepped forward and stated that she was afraid she would become nervous and confused listening to witnesses testify. She also stated that she had a tendency to believe that if a case came as far as a trial that the defendant was probably guilty. The court stated that her beliefs were improper and explained:

"THE COURT: *** Under our law as Mr. Pendleton is here he is no different than you or I. Right now he is presumed to be innocent of this charge.

Someone has made an accusation is it your feeling now because an accusation has been made you can't listen to the evidence and decide whether or not that accusation is truthful or not?

PROSPECTIVE JUROR PASSOWIC: Yes.

THE COURT: You don't think you can do that?

PROSPECTIVE JUROR PASSOWIC: No.

THE COURT: Based merely upon the fact that he has been accused?
***
PROSPECTIVE JUROR PASSOWIC: And all of the work that goes into getting to this point.

THE COURT: Okay. Thank you, when you reach the jury box we'll talk about it."

The trial judge began individual questioning of the first 14 venire members. The third prospective juror, Lorene Reed, expressed her distaste for guns and those who use them. She initially stated that she would not be able to consider a gun as just another fact in the case. She explained that her feelings stemmed from a past experience of having had one held against her head. Upon further questioning, she stated that she would not find defendant guilty solely because a gun was used in the alleged crime if there was no evidence that defendant used a gun. The court responded:

"THE COURT: Well, that's all I'm asking you. You're saying you don't like guns and therefore it's going to influence you. Certainly it would influence you if the evidence was that person, Number A, took a gun and shot you in the head or shot somebody in the head then you may be influenced by that. But if the evidence is that a person is on the ground, he is shot and he is dead there has got to be other facts to convince you that Mr. Pendleton is guilty or not guilty of anything.

So, all I'm asking is that you not allow your feelings about guns to overbear your judgment and your assessment of all the other facts in the case.

PROSPECTIVE JUROR REED: Okay.

THE COURT: Can you do that?

PROSPECTIVE JUROR REED: Yes, I can do that."

The first group of prospective jurors was tendered to the prosecution and defense attorneys. The defense made a motion to excuse Ms. Reed for cause. This motion was denied. The defense then exercised peremptory challenges for Ms. Reed and three others.

A second panel was called into the box for individual questioning. This panel included prospective juror Carol Passowic. When individually questioned by the court, Ms. Passowic stated that it helped to listen to everyone else and she was not sure if she still had her earlier concerns about the presumption of innocence. She ultimately stated her belief that she could be a fair juror.

The defense challenged Ms. Passowic for cause, citing her initial problem with defendant's presumption of innocence. Defense counsel contended that Ms. Passowic's initial representations were her true feelings and that her subsequent representations were attempts to

acquiesce to the judge and to conform with the other members of the venire. The trial judge believed that Ms. Passowic could be a fair juror because she had been educated in her duties and had changed her mind. The trial judge overruled the objection to Ms. Passowic and the defense exercised peremptory challenges to strike Ms. Passowic and another prospective juror.

The judge noted that 11 jurors had been selected. The judge then named the next three venire members and the defense exercised a peremptory challenge excusing one of them. The judge then named the last juror and the first and second alternates from the remaining venire and asked if there were any objection. Both attorneys answered "no." The jury selection was thereby completed and the second trial commenced.

## THE TRIAL

James Mackey testified that he was standing near the corner of 75th and Coles at about 9 p.m. on October 15, 1991. He observed two people stop in front of the victim, who was standing with his hands in his pockets across the street in front of Lou's Lounge. The two people began shooting at the victim. After the first shot, the victim fell to the ground and he saw defendant stand over the victim and shoot him three or four more times. Defendant and his companion ran down Coles Street after the shooting. Later that night, Mr. Mackey identified defendant and his companion in a lineup.

Vicki Clark testified that she was the victim's cousin. On October 15, 1991, at about 9 p.m., Ms. Clark was standing in front of 7452 South Coles when she heard several gunshots and looked in the direction of 75th and Coles. She saw defendant and another man running away from the corner. She ran to her cousin and noticed his face was bleeding. Ms. Clark took the police to defendant's house and later identified him in a lineup.

Freddie Bailey testified that on October 15, 1991, at about 9 p.m., he was sitting on a porch near the corner of 75th and Coles when he heard seven or eight gunshots coming from the corner. He looked in the direction of the gunfire and saw defendant and a companion running toward him. He testified that defendant was laughing with his companion and holding a large gun over his head. Bailey went to the front of Lou's Lounge, where he saw the victim on the ground with a gunshot wound to the head. Later that evening, he identified defendant in a lineup.

Dr. Lifschultz, a Cook County medical examiner staff pathologist, testified that on October 16, 1991, he autopsied the body of George Fife and found four gunshot wounds. One of the wounds was a close-

range gunshot to the left temple. He testified that this wound was consistent with somebody standing over a body and shooting down into it. He stated that, in his professional medical opinion, George Fife died as a result of these four gunshot wounds.

Detective James Boylan testified that on October 15, 1991, at about 10 p.m., he arrived at the murder scene and began his investigation. Vicki Clark informed Detective Boylan that one of the offenders was defendant and directed him to defendant's house. Defendant and his companion were interviewed about the murder of George Fife. James Mackey, Freddie Bailey, and Vicki Clark positively identified defendant in a lineup. Defendant was arrested and advised of his rights.

According to Detective Boylan, defendant told him that he had been at home all evening and had no knowledge of the shooting. Detective Boylan notified the State's Attorney's office and Assistant State's Attorney Joan O'Brien was dispatched to Area 2 to interview defendant. Defendant denied any involvement in the murder of George Fife and stated that he was home from 7:30 p.m. until the police arrived later that evening. Defendant also stated that he knew the victim and had fought with him recently. The State then rested.

The defense called four witnesses, all of whom testified that defendant came home from work sometime between 4 and 4:30 p.m. on October 15, and helped his family move into their new residence at 2700 E. 75th Place throughout the remainder of the evening. All four defense witnesses had been at defendant's home from the morning hours until defendant was arrested by the police that evening. The State called Detective Boylan as a rebuttal witness. Detective Boylan testified that he did not see any boxes or evidence of people moving in or out of the house.

After closing arguments the jury heard the judge's instructions and retired to deliberate. The jury found defendant guilty of first-degree murder.

SENTENCING HEARING

The trial judge conducted defendant's sentencing hearing on March 3, 1993. The defense argued that defendant had no reason to commit the crime because he had never been convicted of a crime, he had a loving family, he graduated from high school and held a stable job, and he had no drug or alcohol problem. The State recommended an extended sentence, arguing that defendant's actions of shooting another round into the victim after he fell to the ground, and laughing as he fled the scene, were indicative of wanton cruelty.

Defense counsel requested a minimum sentence and urged the

court to consider defendant's stable work history and lack of a criminal record. Defense counsel also asked the court to consider defendant's potential to be rehabilitated.

The court noted that defendant's actions were shocking and aggravating, but agreed with defense counsel that this was not an appropriate case for an extended sentence. However, the court noted that a minimum sentence would give the wrong signal. After weighing all the factors in aggravation and mitigation, the trial court sentenced defendant to a term of 40 years in the Department of Corrections.

## DISCUSSION

### I

Defendant first argues that his due process rights under the Illinois Constitution were violated because the defense had to exercise two of its peremptory challenges to strike venire members that should have been excused for cause by the trial court.

■ The purpose of *voir dire* "is to filter out prospective jurors who are unable or unwilling to be impartial." *People v. Washington,* 104 Ill. App. 3d 386, 390, 432 N.E.2d 1020, 1023 (1982). A person is incompetent as a juror if her state of mind is such that the defendant will not receive a fair and impartial trial with her as a juror. *People v. Cole,* 54 Ill. 2d 401, 413, 298 N.E.2d 705, 712 (1973).

The determination of a venire member's impartiality is within the sound discretion of the trial judge and will not be set aside unless it is against the manifest weight of the evidence. *People v. Tipton,* 222 Ill. App. 3d 657, 664, 584 N.E.2d 310, 314 (1991). The trial judge should consider the venire member's entire *voir dire* examination and not single out certain statements to determine whether the venire member has the appropriate impartial state of mind. *People v. Peebles,* 155 Ill. 2d 422, 462, 616 N.E.2d 294, 312-13 (1993).

A review of the *voir dire* examination indicates that both Carol Passowic and Lorene Reed should have been excused for cause. Ms. Passowic expressed her belief that she would have a difficult time presuming defendant was innocent because she believed that once a case has come as far as a trial, the defendant is probably guilty. Although Ms. Passowic ultimately stated that she understood and could apply the presumption of innocence, the totality of her examination indicated an inability to hold the State to its burden of proving defendant's guilt beyond a reasonable doubt.

The *voir dire* examination revealed that Ms. Reed was a victim of an assault involving a gun being placed to her head, and she

expressed her doubt that she could be fair in a case involving a gun. Because of the factual similarity between the crime being alleged in defendant's case and the crime in which Ms. Reed was involved, the defendant's motion for cause should have been granted by the trial court. Indeed, the trial judge acknowledged: "Certainly it would influence you if the evidence was that person, number A, took a gun and shot you in the head or shot somebody in the head, then you may be influenced by that." The trial court's attempts to rehabilitate Ms. Reed could not erase Ms. Reed's experience as a serious crime victim. Therefore, the trial court's determination regarding Ms. Reed's ability to be an impartial juror was against the manifest weight of the evidence.

Defendant contends that he suffered prejudice because he used two of his seven peremptory challenges to excuse Ms. Passowic and Ms. Reed from the jury and consequently was denied the full use of his peremptory challenges. He claims that "the ability to use peremptory challenges is a sacred process which may well make the difference between not just an impartial jury but a jury that is sympathetic to a specific defendant or theory of defense." Defendant does not claim that he was denied a fair and impartial jury. Rather, he argues that the "sacred process" of using peremptory challenges to choose a jury is protected by the Illinois Constitution.

■ Defendant emphasizes he is not asserting a due process violation under the federal constitution. Presumably he makes no such claim because the United States Supreme Court has held that as long as a defendant receives a fair and impartial trial, federal due process is not denied where a defendant exhausts all of his peremptory challenges and used one of them to remove a juror who should have been removed for cause. *Ross v. Oklahoma*, 487 U.S. 81, 101 L. Ed. 2d 80, 108 S. Ct. 2273 (1988). The Court reasoned that peremptory challenges are creatures of statute and are not required by the federal constitution. *Ross*, 487 U.S. at 90, 101 L. Ed. 2d at 90, 108 S. Ct. at 89.

Defendant urges this court to interpret the "evolving" due process clause of the Illinois Constitution in a way that will extend the Illinois due process rights beyond those provided under the federal constitution. However, Illinois case precedent does not support such an extension. Although no court has explicitly held that Illinois and federal due process rights are equal in the area of peremptory challenges, the settled principle in Illinois is that a court's failure to remove a juror for cause is grounds for reversal only if the defense has exercised all of its peremptory challenges and an objectionable juror was allowed to sit on the jury. Defendant has not alleged that an objectionable juror sat on his jury.

In *People v. Green*, 199 Ill. App. 3d 927, 557 N.E.2d 939 (1990), the court held that the defendant was precluded from asserting that the trial court erred in refusing to excuse a prospective juror for cause where the defendant exercised a peremptory challenge on the juror, used all of his peremptory challenges, and failed to ask for more or indicate that he would have excused a juror if he had any left. *Green*, 199 Ill. App. 3d at 931, 557 N.E.2d at 942. The court quoted the Illinois Supreme Court in *Spies v. Illinois*, 122 Ill. 1, 12 N.E. 865 (1887), which stated: "We can not reverse this judgment for errors committed in the lower court in overruling challenges for cause to jurors, even though defendants exhausted their peremptory challenges unless it is further shown that an objectionable juror was forced upon them and sat upon the case after they had exhausted their peremptory challenges." *Spies*, 122 Ill. at 258, 12 N.E. at 989.

Following *Spies*, the courts have reasoned that defendants fail to establish prejudice where they have not indicated that they were forced to accept an objectionable juror, thereby denying the trial court an opportunity to cure the alleged error. *People v. Novak*, 242 Ill. App. 3d 836, 611 N.E.2d 1203 (1993); *People v. Delgado*, 231 Ill. App. 3d 117, 596 N.E.2d 149 (1992); see also *People v. Reid*, 272 Ill. App. 3d 301, 649 N.E.2d 593 (1995); *People v. Marts*, 266 Ill. App. 3d 531, 639 N.E.2d 1360 (1994); *People v. McGhee*, 238 Ill. App. 3d 864, 605 N.E.2d 1039 (1992); *People v. Washington*, 104 Ill. App. 3d 386, 432 N.E.2d 1020 (1982) (finding no reversible error on the theory of waiver); *People v. Harris*, 196 Ill. App. 3d 663, 554 N.E.2d 367 (1990); *People v. Foster*, 195 Ill. App. 3d 926, 552 N.E.2d 1112 (1990) (finding no reversible error on the theory that the error is harmless); *People v. Reinbold*, 247 Ill. App. 3d 498, 617 N.E.2d 436 (1993); *People v. Gleash*, 209 Ill. App. 3d 598, 568 N.E.2d 348 (1991) (following *Ross v. Oklahoma* and holding that reversible error results from the end result of an unfair jury and not from defendant's exhaustion of his peremptory challenges).

Defendant argues that *People v. Hines*, 165 Ill. App. 3d 289, 518 N.E.2d 1362 (1988), supports his position. The court in *Hines* held that defendant did not waive the trial court's error in the denial of his challenges for cause by failing to exercise all of his peremptory challenges. *Hines*, 165 Ill. App. 3d at 297, 518 N.E.2d at 1367. The court noted that the case law established a general rule that a failure to exercise all allotted peremptory challenges fails to establish prejudice. However, the court held that the widespread publicity in the case gave rise to a special need of the defendant to preserve his peremptory challenges. *Hines*, 165 Ill. App. 3d at 297, 568 N.E.2d at 1367. The *Hines* court was clearly carving out an exception to the

general rule because of the publicity of the offense for which the defendant was tried. No such circumstances exist in this case.

With the exception of *Hines*, we found no case in which a court has found grounds for reversal where the defendant used peremptory challenges on venire members the trial court should have dismissed for cause, unless the defendant exhausted all of his peremptory challenges and an objectionable juror sat on the jury. We will not disregard this rule, established in *Spies* over 100 years ago, simply because defendant has chosen to disguise this argument with a claim of an Illinois due process violation. Our state constitution guarantees the right to an impartial jury. We do not believe the process due under the Illinois Constitution includes the right to choose "a jury that is sympathetic to a specific defendant or theory of defense," as defendant would have it. For these reasons, we deny defendant's request for a new trial.

## II

■ Defendant also contends that the trial judge abused his discretion in sentencing him to a term of 40 years' imprisonment. Defendant argues that the trial judge improperly relied on defendant's previous arrests, without corroborating evidence, as an aggravating factor.

A trial court's consideration of bare arrests in aggravation of sentencing, without other corroborating evidence, is error. *People v. Gomez*, 247 Ill. App. 3d 68, 74, 617 N.E.2d 320, 324 (1993); *People v. Wallace*, 145 Ill. App. 3d 247, 258, 495 N.E.2d 665, 670-71 (1986); *People v. Thomas*, 111 Ill. App. 3d 451, 454, 444 N.E.2d 288, 290 (1983). During the sentencing hearing the trial judge stated:

> "Now, certainly as I look at the pre-sentence investigation report, and I do not consider that you were guilty of these offenses, but when I see prior arrests with weapons being involved, even though the cases were S.O.L.'d, it suggest [sic] to me that weapons in our society continue to be a problem, and that they continue to be in the hands of young people, other young people like yourself are going to be hurt and killed.
>
> I agree with your lawyer, this is not a case for which an extended term, I believe, is appropriate. If you had any background, I believe it would be because I think what you did was indicative of exceptionally cruel and heinous behavior when you can shoot somebody several times as they stand on the street as though they're, you are taking target practice, and then run down the street laughing ***.
>
> *** I don't believe it's a minimum sentence either because I think that would give the wrong signal, it suggests that life is cheap and it doesn't matter."

Defendant claims that the trial judge must have considered his bare arrests as an aggravating factor because the trial court had very few other aggravating factors to point to in imposing sentencing. We disagree. The court may sentence an individual convicted of first-degree murder to a term of imprisonment of not less than 20 years and not more than 60 years. 730 ILCS 5/5—8—1(a)(1)(a) (West 1992). The trial judge specifically rejected an extended term because he considered defendant to have no background. However, the court found defendant's conduct during and after the murder to be "cruel and heinous." The court noted that a minimum sentence would send the wrong signal.

We presume the trial court knew that it was not to consider defendant's bare arrests as an aggravating factor, although it would have been preferable for the court to explicitly state that it did not rely on the arrests. *People v. Gomez*, 247 Ill. App. 3d at 74, 617 N.E.2d at 324. Assuming the court applied the law correctly, as we must do based on the record before us, we find the facts in this case supported the sentence. Defendant also asserts that the 40-year sentence is excessive because this was defendant's first offense and the trial judge did not adequately consider defendant's rehabilitative potential. A sentencing decision is within the sound discretion of the trial court and will not be overturned absent an abuse of discretion. *People v. Gleash*, 209 Ill. App. 3d 598, 610, 568 N.E.2d 348, 356 (1991). The trial court is usually in a better position to determine the appropriate punishment because it has first-hand knowledge of the facts of the case (*Gleash*, 209 Ill. App. 3d at 610, 568 N.E.2d at 356) and such factors as "the defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age." *People v. Perruquet*, 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884 (1977). A reviewing court must refrain from substituting its judgment for the sentencing court merely because it would have weighed the factors differently. *Perruquet*, 68 Ill. 2d at 156, 368 N.E.2d at 885.

The record indicated that the trial judge weighed the mitigating and aggravating factors properly and reached a reasoned decision. The trial judge noted that defendant had stable employment and a loving family. However, he must have believed that the heinous nature of defendant's behavior and his lack of remorse outweighed those factors which favored rehabilitation. We find defendant's conduct provided a sound basis for deciding to impose more than the minimum sentence.

Accordingly, for the foregoing reasons, defendant's conviction and sentence are affirmed.

Affirmed.

WOLFSON and BRADEN, JJ., concur.