THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SENECA L. DAVIS, Defendant-Appellant.

Second District    No. 2—98—1593

Opinion filed May 17, 2000.

G. Joseph Weller and Dev A. Parikh, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, Seneca L. Davis, appeals his convictions of aggravated battery with a firearm (720 ILCS 5/12—4.2 (West 1996)) and aggravated discharge of a firearm (720 ILCS 5/24—1.2(a)(2) (West 1996)). Defendant contends that he was unduly prejudiced as a result of improper jury instructions, improper prosecutorial argument, and evidentiary errors. We reverse and remand.

Defendant was indicted for the offenses of aggravated battery with a firearm, aggravated discharge of a firearm, and unlawful possession of a weapon by a felon, all of which arose from a December 27, 1997, shooting. Defendant severed the unlawful possession of a weapon charge from the other two charges and proceeded to trial on the aggravated battery and aggravated discharge charges. The following evidence was presented at trial.

Eight-year-old L.B. testified that, on December 27, 1997, he was washing his hands in his bathroom when he heard gunshots. L.B. testified that a bullet grazed his left arm.

Robert Biggers testified that, on December 27, 1997, he was sitting on the back porch of his apartment when he observed a car approach the building. The car turned and shots were fired from the car. Biggers identified defendant as the shooter.

During cross-examination, Biggers admitted that he disliked defendant. He further testified during cross-examination that, on January 12, 1998, he spoke with Detective Karlstrand of the Waukegan police department and viewed a photographic lineup. Biggers admitted that he told Karlstrand that he was unable to identify the shooter and that Karlstrand told him, "Sure you know who did it." Biggers agreed

that he felt pressured to choose one of the photographs as that of the shooter. Biggers testified that the shooter's photograph was in the second position in the lineup. Biggers also testified that the picture of defendant showed him to be heavier and darker than he remembered at the time of the shooting.

Biggers also admitted on cross-examination that he had been twice convicted of unlawful possession of a weapon by a felon. The State stipulated that Biggers had been twice convicted of unlawful possession of a controlled substance.

On redirect examination, Biggers testified that he was initially reluctant to identify defendant as the shooter because he feared retaliation.

Officer Eric Deveau of the Waukegan police department testified that, on December 27, 1997, at approximately 11 a.m., he responded to a "shots fired" call at Biggers' apartment. When he arrived, he spoke with L.B. and observed a visible and bleeding wound on L.B.'s upper left arm. L.B. informed Deveau that, at the time of the shooting, he had been standing before the sink in the first-floor bathroom. Deveau observed two holes in the bathroom, one in the north wall above the bathroom sink and one in the south wall. Deveau ran a string between the holes and, from the resulting trajectory, estimated that the shots were fired from the corner of the street and alley behind the apartment building, roughly the same place as indicated by Biggers.

Deveau testified that he also spoke with Biggers. Deveau testified that Biggers told him that the shooter fired six or seven shots. Biggers also informed Deveau that the shooter drove a dark blue or black Oldsmobile Cutlass that had gray primer on the front of the vehicle. Biggers accompanied Deveau as they searched for the car. Approximately a mile from Biggers' apartment, Deveau found the car and Biggers identified it as the same car used in the shooting.

Deveau testified that he searched the car before having it towed away. Deveau testified that he did not find a gun, shell casings, or other contraband in the car. He further testified that he did not smell the odor of burnt gunpowder in the car as he searched it. Deveau also testified that he did not attempt to retrieve fingerprints from the car.

Detective Karlstrand testified that defendant was arrested on March 6, 1998. Karlstrand read preprinted *Miranda* warnings to defendant, after which defendant signed the form to indicate that he understood his rights. Karlstrand testified that defendant agreed to be questioned.

Karlstrand testified that defendant first stated that he was not present at the shooting. According to Karlstrand, after continued questioning, defendant said, "Robert Biggers had a gun, too." Upon

further questioning, Karlstrand testified that defendant admitted that the recovered car was his, that he had seen the police searching the car and towing it away, and that he was the only one who drove it. Karlstrand also testified, over objection, that defendant terminated the questioning, stating that he "didn't have anything further to say" and "that he would take his chances in court."

Officer Randy Furlow testified about a number of pictures of the scene of the shooting and about the recovered bullets from the apartment building. Following Furlow's testimony, the State rested its case. Defendant then chose to rest without calling any witnesses.

During closing argument, while discussing the reasons someone would shoot at Biggers, the prosecutor inadvertently substituted defendant's name for that of Biggers. Defendant immediately moved for a mistrial. The trial court denied the motion for a mistrial and instructed the jury to disregard the statement. The prosecutor further explained to the jury that she had spoken inadvertently.

The prosecutor repeatedly characterized the evidence against defendant as uncontradicted and stated that the jury had heard no other evidence to contradict the State's assertion that defendant fired the shots on December 27, 1997. Additionally, during closing and rebuttal arguments, the prosecutor repeated at least four times that defendant ended his interrogation by Karlstrand by stating that he did not have anything further to say and that he would take his chances in court. Defendant did not object to these arguments.

Following argument, the trial court instructed the jury. The written jury instructions did not contain the pattern instruction concerning the presumption of innocence and the burden of proof in a criminal case. The jury found defendant guilty of both charges, and defendant was sentenced to a 26-year term of imprisonment for aggravated battery with a firearm and a concurrent 13-year term of imprisonment for aggravated discharge of a firearm. Defendant's motions for a new trial and to reconsider sentence were denied, and defendant timely appeals.

On appeal, defendant contends that (1) he was denied a fair trial by the introduction of uncorroborated evidence that Biggers feared retaliation if he testified; (2) he was unduly prejudiced by the trial court's failure to instruct, *sua sponte*, the jury concerning the presumption of innocence and the State's burden of proof; (3) the prosecutor improperly commented on defendant's right to remain silent and right to trial; (4) prosecutorial misconduct during closing arguments denied him a fair trial; (5) he was denied due process when a hearing on defendant's motion to suppress evidence was conducted in his absence; and (6) he was denied the effective assistance of

counsel. The jury instruction issue is dispositive of the outcome of this appeal and, accordingly, we address this issue first.

■ Defendant contends that the trial court committed reversible error when it did not give the jury specific written instructions concerning the presumption of innocence and the State's burden of proof. At trial, neither the State nor defendant tendered instructions concerning the presumption of innocence or burden of proof. The pattern instruction provides:

> "[(The) (Each)] defendant is presumed to be innocent of the charge[s] against him. This presumption remains with [(him) (each defendant)] throughout every stage of the trial and during your deliberations on the verdict and is not overcome unless from all the evidence in this case you are convinced beyond a reasonable doubt that [the defendant] is guilty.
>
> The State has the burden of proving the guilt of [(the) (each)] defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. [(The) (A)] defendant is not required to prove his innocence." Illinois Pattern Jury Instructions, Criminal, No. 2.03 (3d ed. Supp. 1999) (hereinafter IPI Criminal 3d No. 2.03 (Supp. 1999)).

The failure of a defendant to tender an instruction or otherwise object at trial or in a posttrial motion ordinarily waives the issue for appellate review. *People v. Layhew*, 139 Ill. 2d 476, 485 (1990). " 'In criminal cases, however, this rule is modified in certain situations by the requirements of a fair trial. It has been held that a court bears the burden of seeing that the jury is instructed on the elements of the crime charged, on the presumption of innocence and on the question of burden of proof. [Citations.]' " *Layhew*, 139 Ill. 2d at 486, quoting *People v. Parks*, 65 Ill. 2d 132, 137 (1976). Thus, we will address this error.

■ While it is error to fail to instruct the jury regarding a defendant's presumption of innocence and the State's burden of proof, it is not necessarily reversible error. *Layhew*, 139 Ill. 2d at 486. The reviewing court "must look to all the circumstances to determine whether [the] defendant received a fair trial, 'including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors.' " *Layhew*, 139 Ill. 2d at 486, quoting *Kentucky v. Whorton*, 441 U.S. 786, 789, 60 L. Ed. 2d 640, 643, 99 S. Ct. 2088, 2090 (1979).

■ Before beginning *voir dire* of the prospective jurors, the trial court informed the venire that it would read to the jury the final instructions at the end of the case and that the jury would have those written instructions to take with them into the jury room to read dur-

ing deliberations. The trial court then informed the venire that they had to follow the law the trial court would give to them. The trial court described the structure of the trial and informed the venire that defendant was presumed innocent throughout the trial and that the State had to prove defendant guilty beyond a reasonable doubt. During *voir dire*, the trial court questioned the prospective jurors whether, if the evidence did not prove beyond a reasonable doubt that defendant was guilty, they would return a verdict of not guilty, and whether, if the evidence proved defendant guilty beyond a reasonable doubt, they would return a verdict of guilty.

Before opening statements and closing arguments, the trial court admonished the jurors that anything said by the attorneys was not evidence. Defense counsel commented on the State's burden of proof during opening statement and, during closing argument, defense counsel commented on both defendant's presumption of innocence and the State's burden of proof.

The trial court then instructed the jury about the law. The instructions did not include IPI Criminal 3d No. 2.03 (Supp. 1999), but the issues instructions informed the jury that they had to find that the State proved each element of aggravated battery with a firearm and aggravated discharge of a firearm beyond a reasonable doubt in order to find defendant guilty.

Considering the factors enumerated in *Layhew* with respect to the facts of this case, we conclude that defendant was denied a fair trial due to the failure of the jury to be instructed about the presumption of innocence. The trial court informed the venire that the jury would receive written instructions at the end of the case and that they must follow the law that the trial court would give to the jury. Thus, the impact of any of the trial court's statements concerning the presumption of innocence was diminished. See *People v. Cage*, 146 Ill. App. 3d 726, 732 (1986). Before commencing *voir dire*, opening statements, and closing arguments, the trial court also admonished the jury that statements made by the attorneys were not evidence, thus diluting the impact of any the attorneys' statements concerning the presumption of innocence and burden of proof. See *Cage*, 146 Ill. App. 3d at 732-33 (statements and arguments of counsel do not have the same impact on a jury as do instructions; instructions about opening statements and closing arguments diminish efficacy of counsel's pronouncements about presumption of innocence and burden of proof).

Additionally, contrary to the State's contention, the evidence against defendant was not overwhelming. No physical evidence linked defendant to the crime. The police failed to record defendant's statement either by means of video or audio tape or by writing it down for

defendant to sign. The State's primary witness had four felony convictions and admitted that he disliked defendant. The State's case hinged on the credibility of its witnesses and, while there was sufficient evidence to support the jury's determination, it was by no means overwhelming.

Finally, defendant did not testify or present evidence, thereby relying solely on his presumption of innocence and the State's burden of proving him guilty beyond a reasonable doubt. Because defendant's trial strategy was to rely on his presumption of innocence and the failure of the State to prove the case against him, it was of the utmost importance that the jury understood the presumption of innocence and the State's burden of proof. The trial court's failure to specifically instruct the jury assumed greater importance in light of the trial court's admonitions to the jury that the trial court would provide the jury with the law and written instructions to be used during deliberations and that the jury must follow the law the trial court gave them. Accordingly, we hold that the failure to specifically instruct the jury concerning the presumption of innocence and the burden of proof was reversible error under the facts of this case.

The State argues that *Layhew* and *People v. Curry*, 296 Ill. App. 3d 559 (1998), are sufficiently similar to the case at bar to control its disposition. In both cases, the reviewing courts determined that the trial court's statements and questioning of potential jurors during *voir dire* and the comments of the attorneys sufficiently apprised the jury of the presumption of innocence and burden of proof. *Layhew*, 139 Ill. 2d at 490-92; *Curry*, 296 Ill. App. 3d at 568. We find these cases to be distinguishable, however, as the defendants in both cases presented evidence, and each testified in his own behalf. *Layhew*, 139 Ill. 2d at 483-84; *Curry*, 296 Ill. App. 3d at 564-65. In this case, by contrast, defendant did not testify or present evidence, instead relying on his presumption of innocence and the State's burden of proof.

■ We also address the issue of defendant's invocation of his right to remain silent and terminate an interrogation, as it may possibly recur on remand. During the direct examination of Karlstrand, the State elicited that, after answering some questions, defendant stated that he did not have anything further to say and that he would take his chances in court. Eight times during the course of Karlstrand's direct and redirect examination, the prosecutor or Karlstrand mentioned defendant's invocation of his right to silence by terminating the interrogation. By weaving it into her closing argument four times, the prosecutor emphasized the theme that defendant terminated the interrogation and "would take his chances at trial." It was error for the State to emphasize defendant's decision to terminate the

interview (see *People v. Bunning*, 298 Ill. App. 3d 725, 731 (1998) (plain error occurred where police officer testified during cross-examination that defendant refused to answer any more questions even though State did not comment during argument)), and this error was compounded by the State's emphasis that defendant would take his chances in court. Moreover, the State emphasized that the evidence was uncontradicted and that the jury had heard no other evidence to contradict the State's conclusion that defendant was the shooter. It is thus clear from the State's development of the evidence in this case and its argument that the reason the State introduced and used this evidence concerning the termination of his interrogation was to suggest to the jury defendant's guilty knowledge and that defendant was an arrogant punk deserving of punishment. This error would also be sufficient to require retrial. Accordingly, the State is admonished not to repeat this error on remand.

In light of our resolution of the above issues, we need not address defendant's remaining contentions. We must note, however, that, based on our review of the record, there was sufficient evidence from which a jury could find defendant guilty beyond a reasonable doubt of the charges of aggravated battery with a firearm and aggravated discharge of a firearm. Accordingly, a remand will not subject defendant to double jeopardy or violate due process. See *Bunning*, 298 Ill. App. 3d at 733. We also note that our determination about the sufficiency of the evidence is not a binding determination of defendant's guilt but merely protects his rights under the law.

The judgment of the circuit court of Lake County is reversed, and the cause is remanded for further proceedings consistent with this order.

Reversed and remanded.

THOMAS and HUTCHINSON, JJ., concur.