SECOND DIVISION

March 31, 2005

No. 1-03-3550

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the 

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. )               

)

TERANT PEARSON,   ) Honorable

) Diane Gordon Cannon,

Defendant-Appellant. ) Judge Presiding.

JUSTICE WOLFSON delivered the opinion of the court: 

As of the moment they were selected and sworn, the twelve jurors who decided this case had not heard the words "presumption of innocence."  Nor had they heard the defendant had no duty to present evidence or that the defendant could not be penalized for declining to testify.  The question is this:  Did the trial court's failure to address these basic principles threaten the integrity of the judicial process?  We hold that it did, and we reverse the defendant's conviction for aggravated unlawful use of a weapon and remand the cause for a new trial.

FACTS

Before the questioning of potential jurors began, the trial court made some preliminary comments, but they did not contain any reference, direct or indirect, to the presumption of the  defendant's innocence or to the principles that the defendant is not required to offer any evidence on his own behalf and the defendant's failure to testify cannot be held against him.

During jury selection, the trial judge questioned the potential jurors about their previous experiences with crime and the legal system.  The judge also asked the venire the following questions:

"Is there anybody seated in the jury box, should the State meet their burden of proof beyond a reasonable doubt that could not go back into the jury room with your fellow jurors and the law as I give it to you and sign a verdict form of guilty? ***

Should the State fail to meet their burden of proof beyond a reasonable doubt, is there anybody seated in the jury box who could not and would not go back into the jury room with your fellow jurors and the law as I give it to you and sign a verdict form of not guilty?"

The trial judge did not question potential jurors about the presumption of innocence, whether they understood that defendant had no duty to present evidence, or whether they would hold against the defendant his decision not to testify.  Neither the State's attorney nor defense counsel requested additional questions, although the trial judge offered them that opportunity.

At trial, Detective Tim McDermott testified he and his partners John Burzinski and Carl Suchocki were conducting a directed patrol in the area of 3500 West Ohio Street in Chicago on September 21, 2002, at 2:58 in the afternoon.  When they arrived at 3500 West Ohio Street, several individuals began to shout, "He's got a gun," and pointed to defendant standing nearby.  Detective McDermott and Officer Suchocki got out of their vehicle and walked toward defendant, who looked at them,  pulled a handgun from his waistband, and began to run.  The officers ran after defendant.  Officer Suchocki was running just a few feet behind defendant.  Detective McDermott saw the gun in defendant's hand as he was running.  During the chase, defendant threw the gun over his shoulder into a fenced parkway.  Detective McDermott retrieved the gun, a nine-millimeter semi-automatic handgun, while Officer Suchocki pursued defendant.  Eventually, Suchocki caught defendant and placed him under arrest.  Detective McDermott gave defendant the 
Miranda
 warnings, and defendant said he understood his rights.  Defendant also said, "I didn't rob nobody, I just had a gun."  Upon further examination of the gun, the officers discovered one bullet in the chamber and five in the magazine.  The gun was ready to fire.  Later, when defendant was questioned at the police station, he again admitted having a gun.

Officer Suchocki described the same sequence of events and his testimony corroborated Detective McDermott's.  The parties stipulated defendant had a prior conviction for delivery of a controlled substance.  The State rested its case.  Defendant did not testify and rested his case without offering any evidence.

The trial judge gave several instructions to the jury after final arguments.  Those instructions covered, among other things, the presumption of innocence, the State's burden of proof, and defendant's right not to testify without adverse implication.  

The defendant was convicted of aggravated unlawful use of a weapon and sentenced, based on his criminal history, to a Class X prison term of eight years.

On appeal, he contends: (1) he was deprived of a fair trial because the trial court failed to question potential jurors about their acceptance of basic principles of law; (2) he received ineffective assistance of counsel because his lawyer did not ask the court to question jurors regarding those principles; (3) the trial court failed to give proper Rule 605(a) admonishments (Official Reports Advance Sheet No. 21 (October 17, 2001), R. 605(a), eff. October 1, 2001); and (4) the court's order requiring defendant to submit a DNA sample was an unreasonable search and seizure.

DECISION

I.  Failure to Ask the Questions Contained in Rule 431(b)

Defendant contends the trial court had a 
sua
 
sponte
 duty to ask certain questions of prospective jurors concerning the defendant's basic rights.  He relies on 
People v. Zehr
, 103 Ill. 2d 472, 476, 469 N.E.2d 1062 (1984), where the supreme court held a trial court abused its discretion during 
voir
 
dire
 by refusing defense counsel's request to ask questions concerning the State's burden of proof, the right of the defendant not to testify without penalty, and the presumption of innocence.

Before we can address the issue raised by defendant, we must determine whether his failure to preserve it in the trial court prohibits us from making any further inquiry.

Defendant recognizes he forfeited the issue he now raises by not making a request for questions to jurors and by failing to preserve error in his post-trial motion.  See 
People v. Enoch
, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988).  He asks us to consider the trial court's omission under the plain error doctrine. 

Supreme Court Rule 615(a) provides:  "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."  134 Ill. 2d R. 615(a).  Our supreme court has held the plain error rule may be invoked to review forfeited alleged errors under two circumstances, stated in the disjunctive: (1) the evidence in a criminal case is closely balanced or (2) the error is so fundamental and of such magnitude that the accused is denied the right to a fair trial and remedying the error is necessary to preserve the integrity of the judicial process.  
People v. Johnson
, 208 Ill. 2d 53, 64, 803 N.E.2d 405 (2003); see also 
People v. Nieves
, 192 Ill. 2d 487, 502-03, 737 N.E.2d 150 (2000).  The procedural default is to be honored "if, in the end, the error is found not to rise to the level of plain error as contemplated by Rule 615(a) ***."  
People v. Keene
, 169 Ill. 2d 1, 17, 660 N.E.2d 901 (1995).

Some courts have held the first stop in a plain error analysis is to determine whether any error in fact occurred.  
People v. Sims
, 192 Ill. 2d 592, 621, 736 N.E.2d 1048 (2000) (before invoking the plain error exception it is appropriate to determine whether any error occurred); 
People v. Wade
, 131 Ill. 2d 370, 376, 546 N.E.2d 553 (1989); 
People v. Precup
, 73 Ill. 2d 7, 17, 382 N.E.2d 227 (1978); 
People v. Bradley
, 336 Ill. App. 3d 62, 66, 782 N.E.2d 825 (2002).  

The supreme court imposed a four-part plain error test in 
People v. Crespo
, 203 Ill. 2d 335, 788 N.E.2d 1117 (2001), where an 
Apprendi
 sentencing issue was raised.  The court held an appellate court may correct an error not raised at trial only if there was (1) an error, (2) that is plain, (3) that affects substantial rights, and (4) that "seriously affects the fairness, integrity, or public reputation of the judicial proceedings."  
Crespo
, 203 Ill. 2d at 348.  The 
Crespo
 analysis was used to affirm use of a possibly defective witness identification instruction in 
People v. Tisley
, 341 Ill. App. 3d 741, 793 N.E.2d 181 (2003).

In 
People v. Metcalfe
, 202 Ill. 2d 544, 552, 782 N.E.2d 263 (2002), the supreme court held the question of whether a trial court has the 
sua
 
sponte
 duty to remove a juror for cause should be examined under the plain error doctrine.  The reason, said the court, is "because the issue affects defendant's constitutional right to a fair trial."  
Metcalfe
, 202 Ill. 2d at 552.  The court went on to find there was no error.

On several occasions this court has used the plain error doctrine to examine issues concerning the selection of a fair and impartial jury.  See 
People v. Bowman
, 325 Ill. App. 3d 411, 425, 758 N.E.2d 408 (2001); 
People v. Boston
, 271 Ill. App. 3d 358, 360, 648 N.E.2d 1002 (1995); but see 
People v. Williams
, 221 Ill. App. 3d 1061, 582 N.E.2d 1355 (1991) (defense counsel did not request the 
Zehr
 questions and the trial court did not ask them; the court held the failure to make the 
Zehr
 inquiries was not plain error in light of the overwhelming evidence against the defendant but did not consider whether a substantial right was at stake).

Because of the nature of the forfeited issue in this case, we feel obliged to examine it in spite of the strong evidence presented by the State.

In 
Zehr
, 103 Ill. 2d at 477, the court said:

"We are of the opinion that essential to the qualification of jurors in a criminal case is that they know that a defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be proved guilty beyond a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him.  If a juror has a prejudice against any of these basic guarantees, an instruction given at the end of the trial will have little curative effect."  

Supreme Court Rule 431 was amended in 1997 to ensure compliance with the 
Zehr
 requirements.  177 Ill. 2d R. 431, Committee Comments.  Rule 431(b) provides:

"
If requested by the defendant
, the court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects."  (Emphasis added.)  177 Ill. 2d R. 431(b).

It is noteworthy that the Supreme Court Rules Committee submitted the proposed Rule 431(b) without the words "[i]f requested by the defendant."  See Recommendations to the Supreme Court of Illinois, Illinois Supreme Court Rules Committee, at 3-4 (March 1997).  The court, without additional comment, added the words.  They are not a mere suggestion.  We take the added words to mean what they say:  if defense counsel does not make the request, the trial court has no obligation to ask the questions.  See M. Toomin, 
Jury Selection in Criminal Cases: Illinois Supreme Court Rule 431--A Journey Back to the Future and What It Portends
, 48 DePaul L. Rev. 83, 94-95 (1998) ("What is apparent is that the court might have better accomplished its avowed purpose by vesting trial judges with the responsibility of ensuring that 
Zehr
 inquiries be made rather than leaving this to the discretion of defense counsel"). 

We have found no Illinois decision creating a judge's 
sua
 
sponte
 duty to ask any particular question during 
voir
 
dire
, no matter how significant the answer might be.  In fact, our courts have declined to impose such a duty in several cases.  See 
People v. Porter
, 111 Ill. 2d 386, 401-02, 489 N.E.2d 1329 (1986) (no 
sua
 
sponte
 duty to ask the venire about any possible acquaintance between prospective jurors, the parties, attorneys, witnesses, and the victims); 
People v. Gardner
, 348 Ill. App. 3d 479, 487, 810 N.E.2d 180 (2004) (no 
sua
 
sponte
 duty to ask a gang bias question); 
Bowman
, 325 Ill. App. 3d at 425 (no 
sua
 
sponte
 duty to ask additional questions where juror said "probably" when asked if her past experience would cause her to be unfair); 
People v. Diggs
, 243 Ill. App. 3d 93, 96, 612 N.E.2d 83 (1993) (no 
sua
 
sponte
 duty to ask a racial bias question).

It appears to us that 
Zehr
 cannot be considered in isolation.  It takes shape and form in Rule 431(b).  177 Ill. 2d R. 431(b).  The rule does not require the trial court to ask the questions unless they are requested by defense counsel.  Failing to ask the questions, standing alone, was not error.

II.  Ineffectiveness of Counsel

Defense counsel not only failed to request the Rule 431(b) questions (177 Ill. 2d R. 431(b)), he declined the court's invitation to pose his own questions.  Defendant now contends he received ineffective assistance of counsel.

To establish ineffective assistance of trial counsel, a defendant must demonstrate that counsel's representation was objectively unreasonable and, but for the attorney's errors, there was a reasonable probability the outcome at trial would have been different.  
Strickland v. Washington
, 466 U.S. 668, 694, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); 
People v. Patterson
, 192 Ill. 2d 93, 107, 735 N.E.2d 616 (2000).  A defendant's claim must satisfy both parts of the 
Strickland
 test, and the failure to satisfy either part precludes a finding of ineffective assistance of counsel.  
Patterson
, 192 Ill. 2d at 107.  

A defendant must overcome the strong presumption that counsel's challenged actions were a part of sound trial strategy and not due to incompetence.  
People v. Coleman
, 183 Ill. 2d 366, 397, 701 N.E.2d 1063 (1998).

In this case, the alleged error was defense counsel's failure to request additional 
voir
 
dire
 questions directed at the potential jurors' understanding of the 
Zehr
 principles.  We see no plausible reason for counsel's failure to request the questions.  In some cases, defense counsel chooses not to ask certain 
voir
 
dire
 questions as a matter of trial strategy.  For example, in gang cases, counsel might forgo asking gang bias questions during 
voir
 
dire
 to avoid emphasizing gang involvement in the crime.  See 
People v. Furdge
, 332 Ill. App. 3d 1019, 1026, 774 N.E.2d 415 (2002) (decision not to ask gang bias questions during 
voir
 
dire
 was part of counsel's trial strategy).  

Here, we find no strategic reason for omitting 
voir
 
dire
 questions about the presumption of innocence and the defendant's rights not to present evidence and not to testify.  By asking the questions, counsel could assess each potential juror's beliefs regarding these basic principles, whether he or she understood the principles, and whether he or she would follow those principles when rendering a verdict.  The venire's understanding of these principles is especially important when, as here, the defense does not intend to present any testimony.  See 
People v. Davis
, 313 Ill. App. 3d 585, 591, 730 N.E.2d 518 (2000) ("[b]ecause defendant's trial strategy was to rely on his presumption of innocence and the failure of the State to prove the case against him, it was of the utmost importance that the jury understood the presumption of innocence and the State's burden of proof"). 

Finding no reasonable explanation for counsel's failure to request 
voir
 
dire
 questions on the 
Zehr
 principles, we believe defendant has satisfied the first prong of the 
Strickland
 test.

Having found trial counsel's conduct objectively unreasonable, we must decide whether defendant was prejudiced under the second prong of the 
Strickland
 test.  Under this prong, our focus is on whether defendant has shown a reasonable probability that the jury would have reached a different conclusion if counsel had requested 
voir
 
dire
 on the Rule 431(b) questions (177 Ill. 2d R. 431(b)).  
Strickland
, 466 U.S. at 696, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.  Under the prejudice prong, we consider not only whether counsel's error might have been outcome determinative, but also whether counsel's performance rendered the trial unreliable or fundamentally unfair.  
People v. Jura
, 352 Ill. App. 3d 1080, 1092, 817 N.E.2d 968 (2004), citing 
People v. Richardson
, 189 Ill. 2d 401, 411, 727 N.E.2d 362 (2000).

A factor that weighs heavily against defendant is the overwhelming weight of the evidence against him.  As mentioned above, the State's case was strong.  Two police officers testified they saw defendant with a gun just a few feet away in broad daylight.  Their stories were very similar.  Defendant presented no evidence and relied on the theory that the police officers fabricated their story.

Defendant contends we cannot have confidence in the jury's verdict in this case because it is impossible to determine if the jurors held any prejudice against the 
Zehr
 principles.  In 
Strickland
, the United States Supreme Court said:

"In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law."  
Strickland
, 466 U.S. at 649-95, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

We conclude defendant was not prejudiced by counsel's error.  We do not find any reasonable probability that a jury consisting of reasonable people would have reached a different result given the strength of the State's case.

We believe defendant's claim of ineffective assistance of counsel does not satisfy the second 
Strickland
 prong. 

At the same time, we feel an additional observation about Rule 431(b) questions is warranted.  We have said a defense lawyer's failure to request the questions satisfied the objectively unreasonable prong of the 
Strickland
 test when the trial court does not ask the questions.  We leave open the question of what the result would be when counsel's failure to request the questions is part of a case where the evidence is close.

III.  Failure of the trial court to meet the requirements of Rule   431(a)

All of Supreme Court Rule 431 (177 Ill. 2d R. 431) is on the table in this case.  Whether Rule 431(a) was complied with in this case is a matter we address pursuant to the plain error doctrine.

Rule 431(a) provides:

"The court shall conduct 
voir
 
dire
 examination of prospective jurors by putting to them questions it thinks appropriate touching upon their qualifications to serve as jurors in the case at trial.  The court may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate and shall permit the parties to supplement the examination by such direct inquiry as the court deems proper for a reasonable period of time depending upon the length of the examination by the court, the complexity of the case, and the nature of the charges.  Questions shall not directly or indirectly concern matters of law or instructions.  
The court shall acquaint prospective jurors with the general duties and responsibilities of jurors
."  (Emphasis added.)  177 Ill. 2d R. 431(a).

Before the rule was amended in 1997, trial courts were to conduct 
voir
 
dire
 in accordance with Rule 234 (134 Ill. 2d R. 234).  134 Ill. 2d R. 431.  At the time, the last sentence we have emphasized was part of Rule 234 but was permissive, telling trial judges they "may" acquaint prospective jurors with the general duties and responsibilities of jurors.  In 1997, "may" was changed to "shall," and the same language was added to Rule 431(a).  177 Ill. 2d R. 431(a); compare 134 Ill. 2d R. 234 with 177 Ill. 2d R. 234.  We take the change to mean the requirement is mandatory.  
Emerald Casino, Inc. v. Illinois Gaming Board
, 346 Ill. App. 3d 18, 33, 803 N.E.2d 914 (2004).

The change from permissive to mandatory took place ten years after the Illinois Supreme Court decided 
People v. Emerson
, 122 Ill. 2d 411, 522 N.E.2d 1109 (1987).  There, the defendant complained that the trial court violated the 
Zehr
 decision by refusing his request to question the venire more thoroughly concerning their attitudes about the presumption of innocence.  The State contended the trial court fulfilled the 
Zehr
 requirement with remarks it made about the presumption of innocence at the outset of 
voir
 
dire
.  The court agreed with the State: "*** we believe that the purpose expressed in 
Zehr
 was satisfied here by the trial judge's general admonition coupled with his subsequent discussion of the presumption of innocence."  
Emerson
, 122 Ill. 2d at 427.

It has become standard practice for trial judges in this State to discuss the presumption of innocence with jurors before jury selection begins.  See "Jury Selection," Illinois Judicial Conference, Administrative Office of the Illinois Courts, at tab 5 (1997).

In addition to 
Emerson
, there are several decisions where the trial court's failure to strictly follow 
Zehr
 was excused, at least in part, by its pre-
voir
 
dire
 comments to prospective jurors.  See 
e.g.
 
People v. Benford
, 349 Ill. App. 3d 721, 732, 812 N.E.2d 714 (2004); 
People v. London
, 256 Ill. App. 3d 661, 668-69, 628 N.E.2d 621 (1993); 
People v. Barnett
, 173 Ill. App. 3d 477, 485-86, 527 N.E.2d 1071 (1988).

A trial court's pre-selection comments to jurors played an important role in 
People v. Casillas
, 195 Ill. 2d 461, 474, 749 N.E.2d 864 (2000).  There, the trial court's repeated and lengthy discussion, before 
voir
 
dire
, about the presumption of innocence erased any prejudice that might have been caused by the failure to give the presumption of innocence instruction (IPI Criminal 3d No. 2.03) at the close of the case.

We have found no criminal case directly addressing the last sentence of Rule 431(a), but in 
Schaffner v. Chicago & North Western Transportation Co.
, 129 Ill. 2d 1, 35, 541 N.E.2d 643 (1989), the court held the trial judge's statements concerning the differences in proof required in civil and criminal proceedings "was intended to serve" the purpose of the last sentence in Rule 234--the civil counterpart to Rule 431.  At the time, the last sentence in Rule 234 was permissive.  134 Ill. 2d R. 234.

We conclude Rule 431(a) requires trial judges to inform prospective jurors about a defendant's basic rights, as set out in Rule 431(b), so that they will be informed about their "general duties and responsibilities."  177 Ill. 2d R. 431. Failure to do so is error.

IV.  The Impact of the Trial Court's Failure to Inform the Jury of Defendant's Basic Rights Before Selection Was Completed

Now we must decide whether the trial court's error was harmless or reversible.  We understand the evidence against the defendant was very strong.  At the same time, we are required to consider whether the error was "so fundamental or of such magnitude that the accused is denied the right to a fair trial and remedying the error is necessary to preserve the integrity of the judicial system."  
People v. Williams
, 193 Ill. 2d 306, 348-49, 739 N.E.2d 455 (2000).

Our courts have reversed convictions without stopping to consider the State's evidence where a defendant's substantial rights are endangered.  See 
e.g.
 
People v. Bracey
, 213 Ill. 2d 265, 273, 821 N.E.2d 253 (2004) (failure to obtain a new jury waiver for retrial); 
People v. Blue
, 189 Ill. 2d 99, 138, 724 N.E.2d 920 (2000) (pervasive pattern of prosecutorial misconduct); 
People v. Vargas
, 174 Ill. 2d 355, 366-67, 673 N.E.2d 1037 (1996) (judge left courtroom during a portion of cross-examination of a State's witness); 
People v. Stromblad
, 74 Ill. 2d 35, 41, 383 N.E.2d 969 (1991) (failure to instruct on an essential element of the offense).

The result in this case necessarily turns on the significance and value we give the rights the trial court did not discuss and the prospective jurors did not hear.  Rule 431(b) calls them "principles."  177 Ill. 2d R. 431(b).  The court in 
Zehr
 referred to them as "basic guarantees" for obtaining a fair and impartial jury.  
Zehr
, 103 Ill. 2d at 477-78.  The United States Supreme Court has described the presumption of innocence as "a basic component of a fair trial under our system of criminal justice" (
Estelle v. Williams
, 425 U.S. 501, 503, 48 L. Ed. 2d 126, 130, 96 S. Ct. 1691, 1693 (1976)); and as the "undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of justice" (
Coffin v. United States
, 156 U.S. 532, 543, 39 L. Ed. 2d 481, 491, 15 S. Ct. 394, 403 (1895)).  An impartial jury is guaranteed by the federal constitution (
Morgan v. Illinois
, 504 U.S. 719, 726-27, 119 L. Ed. 2d 492, 501-02, 112 S. Ct. 2222, 2228-29 (1992)) and by the Illinois Constitution (
People v. Strain
, 194 Ill. 2d 467, 475, 742 N.E.2d 315 (2000)).  The right to an impartial jury "is so fundamental to due process that any infringement of that right requires reversal by a reviewing court."  
People v. Boston
, 271 Ill. App. 3d 358, 360, 648 N.E.2d 1002 (1995).

We do not engage in an empty academic exercise. Our experience tells us it is not unusual for prospective jurors to express an unwillingness to accept the presumption of innocence or the right of a defendant to decline to testify without penalty.  We find support for that view in social science research:

" 'Attitudinal surveys conducted by the National Jury Project in jurisdictions throughout the country reveal that a substantial proportion of persons eligible for jury service:-- agree that a person who is brought to trial is probably guilty ***.' "  M. Toomin, 
Jury Selection in Criminal Cases: Illinois Supreme Court Rule 431--A Journey Back to the Future and What It Portends
, 48 DePaul L. Rev. 83, 101 n. 142 (1998), quoting 1 Elissa Krauss & Beth Bonora, Jurywork § 2.04(s)(a) (1997).

Instances of juror bias against the presumption of innocence are demonstrated in our decisions.  For example, in 
People v. Pendleton
, 279 Ill. App. 3d 669, 674, 665 N.E.2d 350 (1996), a potential juror told the trial judge during 
voir
 
dire
 that she would have a difficult time presuming defendant was innocent because she believed that once a case has come as far as a trial the defendant is probably guilty.  On appeal, this court said the juror should have been excused for cause, because her 
voir
 
dire
 answers indicated an inability to hold the State to its burden of proof.  
Pendleton
, 279 Ill. App. 3d at 674.

If a juror has a prejudice against any of the basic guarantees contained in 
Zehr
, "an instruction at the end of the trial will have little curative effect."  
Zehr
, 103 Ill. 2d at 477.

We conclude that selecting jurors who have not heard anything about three of the four basic rights contained in Rule 431(b) is an error "of such gravity that it threatens the very integrity of the judicial process."  
Blue
, 189 Ill. 2d at 138.  We believe the error requires a new trial no matter which plain error analysis we use.

We therefore reverse defendant's conviction and remand this cause for a new trial.  The State's evidence is sufficient to obviate any double jeopardy claims.  Because our decision leaves the defendant unconvicted, we also reverse the order requiring him to submit to DNA testing.  Nor is there any need at this time to discuss the propriety of the trial court's Rule 605(a) admonishments.

CONCLUSION

For the reasons stated, we reverse the defendant's conviction and remand this cause for a new trial.

Reversed and remanded.

BURKE, P.J., concurs.

GARCIA, J., dissents.

JUSTICE GARCIA, dissenting:

Although I agree the trial judge should have done more in discussing with the prospective jurors the "'basic guarantees' for obtaining a fair and impartial jury,"  I cannot agree that the cited portion of Rule 431(a) supports reversing the conviction in this case.  The trial court did nothing to restrict defense counsel's right under Rule 431(a) to request 
Zehr
 questions.  Nor did the trial court misinstruct the jury at the conclusion of the trial as to the State's ultimate burden and the defendant's right not to testify. 

I agree that the change in Rule 431(a) from "may" to "shall" makes the requirement of acquainting the prospective jurors of their basic duties and responsibilities mandatory; the real question, however, is whether the requirement was met in this case.  And, even if I were to agree that the trial court did not satisfy that requirement, the question becomes whether the failure to do so warrants a reversal irrespective of the quantum of evidence presented against the defendant.  

I submit the trial court met the requirement under Rule 431(a), however minimally, by its questions regarding the verdict forms.  The trial court's inquiry to the prospective jurors as to whether each would sign a verdict of guilty or not guilty depending on whether the State was able to prove the defendant's guilt beyond a reasonable doubt, minimally acquainted the jurors with their general duties and responsibilities.  In fact, the same inquiry was posed twice by the trial court: first, before the selection of the 12 members of the jury and second, before the selection of the alternates.  At no time did any member of the jury even remotely suggest that he or she would not abide by the trial court's instruction of signing a verdict form based on whether the State were able to prove guilt beyond a reasonable doubt.

Although I agree that it is a standard practice for "trial judges to discuss the presumption of innocence with jurors before jury selection begins."  A practice does not a rule make.  Nor should a deviation from that practice lead inexorably, as the majority holds here, to the reversal of a conviction that is otherwise based on "overwhelming weight of the evidence against [the defendant.]"  

Interestingly, the only case cited by the majority regarding the import of the final sentences in the civil predecessor to Rule 431(a), Rule 234, 
Schaffner v. Chicago & North Western Transportation Co.
, concluded with our supreme court holding that any violation of Rule 234 by the trial court in addressing matters which might reasonably be argued "concern[ed] matters of law or instructions" failed because "any error arising from those comments was not prejudicial to North Western."  
Schaffner
, 192 Ill. 2d at 35.  I submit, absent a showing of prejudice by the defendant in this case, the same result must obtain here.  See also 
People v. Casillas
, 195 Ill. 2d at 474 (
voir
 
dire
 comments by trial court were sufficient to ameliorate any prejudice from the failure to instruct on the presumption of innocence).  I submit 
Casillas
 may also be read as authority that, in a case such as this, where the trial court informed the prospective jurors of the State's burden and, thus, impliedly, the lack of any burden on the defendant, and where the jury was properly instructed at the conclusion of the trial, reversal is unwarranted without a showing of prejudice.

I also cannot agree that "this case necessarily turns on the significance and value we give the rights," we call principles, otherwise considered "'basic guarantees' for obtaining a fair and impartial jury."  Were the question so simple, I would not dissent.  To demonstrate that the question is not so simple, I direct attention to the numerous cases that must have been decided before our supreme court's holding in 
Zehr
 that did not include the inquiries now mandated by 
Zehr
, as defense counsel may request.  No one would seriously suggest that the outcomes in those cases are somehow suspect without considering the strength of the incriminating evidence in each case.  Nor does 
Zehr
 or Rule 431(a) stand for the proposition that the 
Zehr
 questions must be asked or face a conviction reversal.  The holding in 
Zehr
, supported by the qualifying phrase at the beginning of Rule 431(a), can best be understood to stand for the proposition that in our adversarial system of justice, a trial judge has limited discretion to reject questions that go directly to the qualifications of prospective jurors.  As the majority readily acknowledges, a review under 
Zehr
 turns on whether "a trial court 
abused
 
its discretion
 [during 
voir
 
dire
] concerning the State's burden of proof, the right of the defendant not to testify without penalty, and the presumption of innocence."  (Emphasis added.)  
Zehr
, 103 Ill. 2d at 475.  See 
People v. Williams
, 221 Ill. App. 3d 1061 (reversal not warranted where 
Zehr
 questions not asked, in light of overwhelming evidence against the defendant).

I also reject the suggestion that "[a]ttitudinal surveys *** [suggesting] that a substantial proportion of persons eligible for jury service[ ] agree that a person is brought to trial is probably guilty" somehow supports the outcome here.  Who among us, even as lawyers and judges, hasn't expressed an opinion as to the guilt or innocence of those charged with crimes of whom we learn in the media.  There is a difference, however, between a private opinion unrestrained by the dictates of our criminal justice system and the rejection of those "principles" by members of a jury who are directed to set aside their personal beliefs, follow the instructions of the court, and decide the case solely on the evidence presented. 

Finally, while I agree that the history of Rule 431(a) makes the majority's position plausible, as the 
Zehr
 addition to Rule 431(a) was made in 1997 as was the change from "may" to "shall" in the final sentence of the rule, I cannot agree that our supreme court would, on the one hand, leave it to defense counsel to decide whether 
Zehr
 questions should be asked and, on the other, make the trial court's failure to ask those questions, in the absence of trial counsel's request, reversible error.

As a postscript, I submit that defense counsel may have simply felt comfortable with the makeup of the jury after exercising a single challenge so there was no need to inquire further about the "principles" we all agree are fundamental and essential to our system of justice.  By this I do not mean to suggest that counsel's failure to request the 
Zehr
 questions be asked was part of his trial strategy.  That would be a legal fiction.  But it is also a legal fiction to presume that because the prospective jurors were not informed of the basic principles of our justice system, that they failed to abide by the instructions at the conclusion of the trial and decided this case on other than the overwhelming evidence against the defendant.  I would affirm the defendant's conviction.

Accordingly, I respectfully dissent.